ANDREW P. BRIDGES (CSB No. 122761)
abridges@fenwick.com
LIWEN A. MAH (CSB No. 239033)
lmah@fenwick.com
WILLIAM L. PIEROG (CSB No. 288431)
wpierog@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone:    415.875.2300
Facsimile:     415.281.1350

Attorneys for Plaintiff and Counterclaim Defendant
DIAMOND FOODS, INC.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| DIAMOND FOODS, INC., a Delaware corporation, | Case No. 14-cv-03162-BLF |
| Plaintiff, | **DIAMOND FOODS, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |
| v. | **[FED. R. CIV. PROC. 12(c)]** |
| HOTTRIX, LLC, a Nevada corporation, | |
| Defendant. | Date:        July 9, 2015 |
| | Time:        9:00 A.M. |
| HOTTRIX, LLC, a Nevada corporation, | Courtroom:  3, 5th Floor |
| Counterclaimant, | Judge:       Honorable Beth Labson Freeman |
| v. | |
| DIAMOND FOODS, INC., a Delaware corporation, | |
| Counterclaim Defendant. | |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION FOR JUDGMENT ON THE PLEADINGS ...............................................1

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................................1

I.    INTRODUCTION ..............................................................................................................1

II.   BACKGROUND ................................................................................................................3

    A.    Diamond Foods' *Perfect Popcorn* and Hottrix's *iMunchies* .................................3

    B.    Hottrix Demanded Millions of Dollars Because
    *Perfect Popcorn* Depicted Popcorn in an iPhone App. ...........................................4

    C.    The Basis of Hottrix's Counterclaims ......................................................................5

III.  LEGAL STANDARD FOR JUDGMENT ON THE PLEADINGS ....................................6

IV.   HOTTRIX'S ALLEGATIONS FAIL TO STATE AS A MATTER
    OF LAW A VALID COPYRIGHT INFRINGEMENT CLAIM .......................................7

    A.    None of the Elements in Diamond Foods' *Perfect Popcorn* That Are
    Allegedly Similar to *iMunchies* Are Protectable by Copyright.............................7

        1.    Copyright Does Not Protect Ideas or Expression
        That Merges with Those Ideas.......................................................................8

        2.    Copyright Does Not Protect Hottrix's Idea of Displaying
        Food or Objects on a Mobile Device Screen. ..............................................10

    B.    Aside from the Idea of Showing Popcorn, the Pleadings Establish That
    *Perfect Popcorn* and *iMunchies* Are Not Similar...............................................11

V.    THE PLEADINGS ESTABLISH THAT DIAMOND FOODS DOES NOT
    INFRINGE ANY PROTECTABLE TRADE DRESS OF HOTTRIX ...........................13

    A.    The Trade Dress That Hottrix Claims Is a Generic
    Idea and Not Protectable in Any Circumstances. ...................................................14

    B.    Nothing in the Pleadings Plausibly Shows Any Distinctiveness or
    Secondary Meaning in the Trade Dress That Hottrix Claims.................................16

    C.    The Trade Dress That Hottrix Claims Is Also Functional and
    Thus Invalid on Additional Grounds. .....................................................................18

    D.    The Pleadings Establish That *Perfect Popcorn* Does Not
    Infringe Any Hottrix Trade Dress Because It Does Not Display
    Popcorn to Identify the Source of the App. ............................................................20

    E.    The Pleadings Establish That No Consumer Confusion Is Possible Because
    Any Protectable Hottrix Trade Dress Is Absent from *Perfect Popcorn*. ..............20

**TABLE OF CONTENTS**
(continued)

Page

VI.  HOTTRIX'S STATE-LAW CLAIMS HAVE THE SAME GROUNDS
AS ITS INFRINGEMENT CLAIMS AND FAIL AS WELL ........................................21

A.    The Copyright Act Preempts Hottrix's State-Law Claims. ...................................21

B.    Apart from Preemption, Hottrix's State-Law Claims Have the
Same Grounds as Its Infringement Claims and Fail as Well. ...............................23

1.    Hottrix bases its interference claim on infringement
and alleges no independent wrongful act. ..................................................23

2.    Hottrix bases its unfair competition claim on
infringement and alleges no independent unfair conduct. .........................23

C.    Hottrix's Interference Claim Also Fails Because It
Does Not Plead Essential Elements Such as an Existing
Relationship Between It and a Specific Third Party. ............................................24

CONCLUSION ................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*,
280 F.3d 619 (6th Cir. 2002) ................................................................. 17

*Aliotti v. R. Dakin & Co.*,
831 F.2d 898 (9th Cir. 1987) .......................................................... 7, 9, 11

*AMF v. Sleekcraft Boats*,
599 F.2d 341 (9th Cir. 1979) ................................................................. 21

*Apple Computer, Inc. v. Microsoft Corp.*,
35 F.3d 1435 (9th Cir. 1994) ................................................................... 7

*Architectural Mailboxes, LLC v. Epoch Design, LLC*,
No. 10-cv-974, 2011 U.S. Dist. LEXIS 46180 (S.D. Cal. Apr. 28, 2011) ....................... 23, 24

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................. 6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................. 6

*Bell v. Blaze Magazine*,
No. 99-12342, 2001 WL 262718 (S.D.N.Y. Mar. 16, 2001) ................................ 8

*Big Island Candies, Inc. v. Cookie Corner*,
269 F. Supp. 2d 1236 (D. Haw. 2003) ............................................... 15, 16

*Carson Optical, Inc. v. Prym Consumer USA, Inc.*,
11 F. Supp. 3d 317 (E.D.N.Y. 2014) ................................................. 14, 22

*Cel-Tech Comm'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
20 Cal.4th 163 (1999) .......................................................................... 23

*Christianson v. West Pub. Co.*,
149 F.2d 202 (9th Cir. 1945) ................................................................... 7

*Cohn v. Petsmart, Inc.*,
281 F.3d 837 (9th Cir. 2002) (*per curiam*) ......................................... 21

*Data East USA, Inc. v. Epyx, Inc.*,
862 F.2d 204 (9th Cir. 1988) ................................................................. 10

*Dyer v. Napier*,
No. 04-cv-0408, 2006 WL 2730747 (D. Ariz. Sept. 25, 2006) .................. 10, 12

*Edwards v. Arthur Andersen LLP*,
44 Cal.4th 937 (2008) ..................................................................... 23, 24

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3

*Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co.*,
    132 F.3d 526 (9th Cir. 1997) ...........................................................................6

4

*Erickson v. Blake*,
    839 F. Supp. 2d 1132 (D. Or. 2012) ........................................................... 7, 9

5

6

*Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc.*,
    198 F.3d 1143 (9th Cir. 1999) ......................................................................15

7

*Gorski v. Gymboree Corp.*,
    No. 14- 01314, 2014 U.S. Dist. LEXIS 97816 (N.D. Cal. July 16, 2014) ........... 8, 11

8

9

*Hansen Beverage Co. v. Nat'l Beverage Corp.*,
    493 F.3d 1074 (9th Cir. 2007) ......................................................................21

10

*Home Legend, LLC v. Mannington Mills, Inc.*,
    32 F. Supp. 3d 1273 (N.D. Ga. 2014) ..................................................... 10, 11

11

12

*Horsley v. Feldt*,
    304 F.3d 1125 (11th Cir. 2002) .......................................................................7

13

*Identity Arts v. Best Buy Entmt. Servs. Inc.*,
    No. 05-4656, 2007 WL 1149155 (N.D. Cal. Apr. 18, 2007) ........................... 8, 11

14

15

*In re Gilead Scis. Sec. Litig.*,
    536 F.3d 1049 (9th Cir. 2008) ........................................................................6

16

*Int'l Order of Job's Daughters v. Lindeburg & Co.*,
    633 F.2d 912 (9th Cir. 1980) ........................................................................19

17

18

*Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*,
    58 F.3d 27 (2d Cir. 1995) ........................................................... 2, 14, 15, 16

19

*Kim Seng Co. v. J&A Importers, Inc.*,
    810 F. Supp. 2d 1046 (C.D. Cal. 2011) ..................................................... 9, 11

20

21

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005) ........................................................................7

22

*Lanard Toys, Ltd. v. Novelty, Inc.*,
    511 F. Supp. 2d 1020 (C.D. Cal. 2007) ...........................................................13

23

24

*Landscape Forms, Inc. v. Columbia Cascade Co.*,
    113 F.3d 373 (2d Cir. 1997) ................................................................... 14, 16

25

*Los Angeles News Serv. v. Tullo*,
    973 F.2d 791 (9th Cir. 1992) ........................................................................10

26

27

*Mach. Head v. Dewey Global Holdings, Inc.*,
    No. C 99-04326 CW, 2001 WL 1747180 (N.D. Cal. Dec. 13, 2001) ....................21

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**TABLE OF AUTHORITIES**
(continued)

Page

*McGann v. Ernst & Young,*
  102 F.3d 390 (9th Cir. 1996) ......................................................................... 6

*Mendelsohn v. Intalco Aluminum Corp.,*
  No. 06-0190, 2006 WL 1148559 (W.D. Wash. Apr. 21, 2006) ...................... 6

*Murray v. Cable Nat'l Broad. Co.,*
  86 F.3d 858 (9th Cir. 1996) ......................................................................... 21

*Nat'l Lighting Co. v. Bridge Metal Indus.,*
  601 F. Supp. 2d 556 (S.D.N.Y. 2009) ......................................................... 14

*NetApp, Inc. v. Nimble Storage, Inc.,*
  No. 5:13-cv-05058, 2015 U.S. Dist. LEXIS 11406 (N.D. Cal. Jan. 29, 2015) ........ 22

*O'Connor v. Uber Techs., Inc.,*
  No. 13-3826, 2014 U.S. Dist. LEXIS 124136 (N.D. Cal. Sept. 4, 2014) ................. 6

*Oriental Art Printing, Inc. v. Goldstar Printing Corp.,*
  175 F. Supp. 2d 542 (S.D.N.Y. 2001) ..................................................... 9, 11

*Rachel v. Banana Republic, Inc.,*
  831 F.2d 1503 (9th Cir. 1987) ..................................................................... 19

*Rice v. Fox Broad. Co.,*
  330 F.3d 1170 (9th Cir. 2003) ................................................................... 7, 9

*Satava v. Lowry,*
  323 F.3d 805 (9th Cir. 2003) ........................................................... 2, 8, 9, 11

*Sega Enters. Ltd. v. Accolade, Inc.,*
  977 F.2d 1510 (9th Cir. 1992) ....................................................................... 2

*Site Pro-1, Inc. v. Better Metal, LLC,*
  506 F. Supp. 2d 123 (E.D.N.Y. 2007) ......................................................... 20

*Smart Inventions, Inc. v. Allied Commc'ns Corp.,*
  94 F. Supp. 2d 1060 (C.D. Cal. 2000) ........................................................... 8

*Smith & Hawken, Ltd. v. Gardendance, Inc.,*
  No. 04-1664, 2004 U.S. Dist. LEXIS 22934 (N.D. Cal. Nov. 5, 2004) ................. 22

*Vaughan Mfg. Co. v. Brikam Int'l, Inc.,*
  814 F.2d 346 (7th Cir. 1987) ....................................................................... 19

*Vuitton et Fils S.A. v. J. Young Enters., Inc.,*
  644 F.2d 769 (9th Cir. 1981) ....................................................................... 19

*Wal-Mart Stores, Inc. v. Samara Bros.,*
  529 U.S. 205 (2000) ........................................................................ 13, 14, 17

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES
**(continued)**

**Page**

*Walker & Zanger, Inc. v. Paragon Indus., Inc.*,
　549 F. Supp. 2d 1168 (N.D. Cal. 2007)......................................................13, 14, 15

*Walt Disney Co. v. Goodtimes Home Video Corp.*,
　830 F. Supp. 762 (S.D.N.Y. 1993) ......................................................................17

*Westside Ctr. v. Safeway Stores 23, Inc.*,
　42 Cal. App. 4th 507 (1996) ................................................................................24

*Wild v. NBC Universal, Inc.*,
　788 F. Supp. 2d 1083 (C.D. Cal. 2011) ............................................................3, 21

*Yurman Design, Inc. v. PAJ, Inc.*,
　262 F.3d 101 (2d Cir. 2001) ..............................................................14, 16, 17, 19

*Zella v. E.W. Scripps Co.*,
　529 F. Supp. 2d 1124 (C.D. Cal. 2007) ................................................................7

**STATUTES AND RULES**

15 U.S.C. § 1125(a)(3) ..............................................................................................18

17 U.S.C. § 102(b) ......................................................................................................8

Copyright Act .....................................................................................................*passim*

Federal Rule of Civil Procedure 12(c).............................................................1, 6, 14

Lanham Act ................................................................................................13, 14, 17, 20

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## NOTICE OF MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiff and Counterclaim Defendant Diamond Foods, Inc. ("Diamond Foods") gives notice that, on July 9, 2015 at 9:00 A.M., or as soon thereafter as feasible, Diamond Foods will, and hereby does, move the Court under Federal Rule of Civil Procedure 12(c) for judgment on the pleadings declaring that Diamond Foods has not infringed Hottrix's alleged copyrights or trade dress in its *iMunchies* works, or otherwise violated any of Hottrix's rights, and dismissing Hottrix's counterclaims.

Based on the allegations in the pleadings, Hottrix has no protectable rights in any elements that may be similar between Hottrix's *iMunchies* visual trick application for mobile devices and Diamond Foods' *Perfect Popcorn* cooking accessory application. Accordingly, *Perfect Popcorn* does not infringe upon any copyright or trade dress interest of Hottrix. Since the alleged infringement is also the basis for Hottrix's state-law counterclaims, those counterclaims also fail. In addition, the Copyright Act preempts Hottrix's state-law claims that rest upon allegations that fall within the scope of copyright law. Diamond Foods bases this motion upon this Notice; the Memorandum of Points and Authorities below; the supporting Declaration of Andrew Bridges, and all exhibits to that Declaration; all pleadings and documents on file in this action; and any other materials or argument that the Court may consider in connection with this motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Describing itself as a producer of "digital visual tricks," Hottrix, LLC sells apps for mobile devices that conjure up illusions of food appearing inside the devices. In this case Hottrix tries to conjure up copyright and trade dress protection for its depiction of popcorn in its *iMunchies* app and a related video to claim massive damages from Diamond Foods over its provision of an unrelated app that functions as an accessory for cooking microwave popcorn.[1] But Hottrix's claimed rights are as illusory as its tricks. It is fundamental that "ideas are not

---

[1] The *iMunchies* works that Hottrix alleges Diamond Foods infringed include an app and video. Countercls. ¶ 2. The *iMunchies* app is similar to the *iMunchies* video, except that the latter is a "non-interactive video" instead of interactive. *Id.* ¶ 24. Both depict fully popped popcorn on a mobile device screen. *Id.* ¶¶ 18, 25. The purpose is to "make it appear as if the device is holding a certain food or beverage." *Id.* ¶ 1.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

copyrightable." *Satava v. Lowry*, 323 F.3d 805, 810 (9th Cir. 2003). A copyright owner "may not prevent others from copying elements of expression that nature displays for all observers." *Id.* (holding that copyright owner "may not prevent others from copying aspects of [a jellyfish] depiction in the glass-in-glass medium"). In addition, "just as copyright law does not protect ideas but only their concrete expression, neither does trade dress law protect an idea, a concept, or a generalized type of appearance." *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 32–33 (2d Cir. 1995). Furthermore, because consumers buy *iMunchies* for the purpose of having snack food appear on their mobile devices as a magic trick, the display of the food images in the *iMunchies* app is functional and thus not protectable as trade dress. "Functional features of a product are features which constitute the actual benefit that the consumer wishes to purchase." *Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1531 (9th Cir. 1992) (internal quotation marks omitted). Copyright and trade dress law do not allow Hottrix to monopolize the idea or function of depicting food.

Moreover, the pleadings themselves show that no reasonable consumer could confuse the apps merely because they both depict popcorn. Diamond Foods' *Perfect Popcorn* is an app that listens for the frequency of pops of popcorn in a microwave oven to help the user know when to turn off the microwave and avoid either uncooked or scorched popcorn. For that reason the Apple iTunes app store categorizes *Perfect Popcorn* under "Food and Drink." Dkt. 14 [Hottrix "Answer" and "Countercls."] ¶ 4. In contrast, the iTunes store categorizes Hottrix's *iMunchies* under "Games" because it "has no utilitarian purpose," is "for entertainment purposes," and depicts a variety of snack foods (not merely popcorn) as parts of digital visual tricks. *Id.* ¶ 3.

The pleadings also reveal how differently the apps portray popcorn. Whereas *Perfect Popcorn* "displays a visual simulation of popping popcorn," *iMunchies* has no similar depiction. Instead, *iMunchies* shows "fully popped" popcorn, and "no popcorn kernels appear on the screen." Answer ¶ 20. The pleadings definitively show the parties' different purposes and marketing, preventing any likelihood of confusion to consumers.

The same allegations of copyright and trade dress infringement also underlie Hottrix's state-law claims of unfair competition and intentional interference with prospective economic

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    advantage.  Countercls. [Dkt. 14] ¶¶ 70, 81.  To the extent that copyright infringement is the basis

2    of the state-law claims, the Copyright Act preempts them.  "Where claims of . . . interference are

3    based on the misappropriation or improper use of one's exclusive right to exploit a protected

4    work, such a claim essentially restates the infringement claim and is preempted."  *Wild v. NBC*

5    *Universal, Inc.*, 788 F. Supp. 2d 1083, 1110 (C.D. Cal. 2011).  Similarly, with respect to unfair

6    competition claims, "where the alleged improper business activity is the act of copyright

7    infringement, the claim is preempted."  *Id.* at 1111.  Even without preemption, the fatal flaws in

8    Hottrix's copyright and trade dress infringement theories also doom the state-law claims that

9    Hottrix bases on those theories.

10   **II.    BACKGROUND**

11       **A.    Diamond Foods' *Perfect Popcorn* and Hottrix's *iMunchies***

12       Diamond Foods produces, markets, and sells Pop Secret popcorn.  Diamond Foods also

13   makes available *Perfect Popcorn*, a free popcorn timing application for use in cooking Diamond

14   Foods' popcorn products in a microwave oven.  Diamond Foods offers *Perfect Popcorn* in the

15   Apple iTunes store under the category "Food and Drink."  Answer ¶ 4.  The iTunes description

16   says that *Perfect Popcorn* "listens to the pops coming from your microwave to find the precise

17   moment when your popcorn is ready."  Dkt. 1 ["Compl."] ¶ 16.  As Hottrix describes in its

18   Counterclaims, the *Perfect Popcorn* app "simulates popcorn being popped" on mobile devices.

19   Countercls. ¶ 35.  Upon activation, *Perfect Popcorn* states on the screen that it is "Listening. . . ."

20   Compl. ¶ 15 (first screenshot).  *Perfect Popcorn* also instructs the user, "FOR BEST RESULTS

21   Point the phone's speakers towards the microwave and keep within 3 feet."  *Id.*  Then, the screen

22   alternates between a simulation of the inside of a microwave popcorn bag—showing popping

23   kernels and gradually a mix of both popped and unpopped kernels—with verbal updates such as

24   "GETTING CLOSER," "ALMOST THERE" and "PERFECT POPCORN COMING UP!"  *Id.*

25   Finally, the screen displays "STOP MICROWAVE" and "POPCORN IS READY."  *Id.*

26       Hottrix is not in the business of selling popcorn or any other food.  Compl. & Answer

27   ¶ 17.[2]  Hottrix produces, markets, and sells funny mobile applications.  *Id.*  It describes itself as a

28   ─────────────────
[2] Citations to a "Compl. & Answer" paragraph refer both to Diamond Foods' allegations in that

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

creator of "digital visual tricks."  Countercls. ¶ 15.  Hottrix's website describes its apps as "Hilarious gags and mystifying tricks," "smartphone wackiness," and "more crazy stuff," among other things.  Compl. & Answer ¶ 17.  The Hottrix name itself underscores the company's identity as a producer of visual tricks.  *Id.*

Hottrix describes *iMunchies* as "the life of the party" and "[h]alf magic trick, half visual-gag."  Compl. & Answer ¶ 18.  *iMunchies* "has no utilitarian purpose," and it is not necessary for popcorn to be actually present or popping to use the *iMunchies* App."  *Id.* ¶ 3.  It is "for entertainment purposes."  *Id.* ¶ 3.  Accordingly the "iMunchies app is listed under the category 'Games.'"  *Id.*  The target audience comprises "magicians and hipsters."  *Id.* ¶ 22.

When a user runs the *iMunchies* app, the user selects one of many objects (such as money, M&Ms, "Healthy Nutmix," "GummiBears," cough drops, popcorn, or chewing gum), and images of those objects appear on the screen.  Compl. & Answer ¶ 19.  If the user selects popcorn, the popcorn that appears on the *iMunchies* app screen is "fully popped," and no popcorn kernels appear on the screen.  *Id.* ¶ 20; *see also* Countercls. ¶ 25 (showing images of fully popped popcorn).  But *iMunchies* does not merely display the selected items.  The *iMunchies* app allows interactions, such as simulating the shaking of snack foods when one shakes the device or "mak[ing] the snack appear to pour from the screen" when one tilts the device.  Answer ¶¶ 3, 22.  The user can also "display an image of a finger and thumb from the top of the device . . . [that] appear to grab a piece of popcorn and pull it upward, enabling a user to mimic the motion with the user's own hand, leading viewings to perceive the on-screen fingers as the user's real fingers."  Countercls. ¶ 21.  In addition, *iMunchies* lets the user customize the app, allowing the user to change the visual display or "select various sound effects."  Answer ¶¶ 3, 22.

### B.    Hottrix Demanded Millions of Dollars Because *Perfect Popcorn* Depicted Popcorn in an iPhone App.

In a June 23, 2014 letter threatening "a very public litigation," Hottrix demanded that Diamond Foods pull *Perfect Popcorn* from the iTunes store, cease all use of the app, and pay over

paragraph of the Complaint (Dkt. 1) as well as the corresponding admission of those allegations in the same paragraph of Hottrix's Answer (Dkt. 14).

two million dollars as restitution, or alternatively, pay a comparable fee for a license. Compl. ¶ 26 and Exh. A, at 3; Answer ¶ 26 (admitting authenticity of letter). Hottrix alleged that Diamond Foods infringed Hottrix's copyrights and trademark or trade dress, engaged in unfair business practices, and interfered with Hottrix's contractual relations. Compl. Exh. A at 2. Hottrix claimed that *Perfect Popcorn* was derivative of Hottrix's "iMunchies videos from 2007 which show popcorn popping full screen inside of an iPhone" and was a "direct copy of the Hottrix® iMunchies application in look, form and function." *Id.* at 1–2. The only images that Hottrix included in its letter were iPhone screens showing the fully-popped popcorn that appears on the screen in *iMunchies* and the popcorn image after the simulated popping in *Perfect Popcorn* is complete. Hottrix did not allege any other basis for infringement other than the popcorn that appears in *Perfect Popcorn. Id.* at 2.

### C.    The Basis of Hottrix's Counterclaims

After Diamond Foods sued for a declaratory judgment that it is not liable for Hottrix's claims in its June 23, 2014 letter, Hottrix answered and counterclaimed for copyright infringement, trade dress infringement, intentional interference with prospective economic advantage, and unfair competition. Hottrix alleges that *Perfect Popcorn* infringes its copyrights and purported trade dress in *iMunchies* by displaying popcorn popping and appearing on the screen of a mobile device. Countercls. ¶¶ 48, 59. This is also the basis for Hottrix's state-law claims that Diamond Foods intentionally interfered with Hottrix's prospective economic advantage (*id.* ¶¶ 70, 73) and unfairly competed (*id.* ¶¶ 81, 82–83).

More generally, Hottrix alleges that consumers recognize it as the source of any app or video creating the illusion of a video screen as a container filling up with food or drink. Countercls. ¶¶ 3, 29. Hottrix does not allege that *Perfect Popcorn* induces users to believe that real, interactive popcorn is within the screen or mobile device. Quite the opposite: *Perfect Popcorn* depicts how popcorn popping inside a popcorn bag would look, as the "Inside The Bag Vision" label suggests.

Although Hottrix alleges that *iMunchies* has sound effects and allows other user interaction (Countercls. ¶ 22; Answer ¶ 3), Hottrix does not allege that *Perfect Popcorn* has

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

popcorn popping sound effects or customization like *iMunchies*' "editable effects," "though-screen action," "motion control snacks," selection of non-popcorn objects, or other user input. Answer ¶ 3.

### III.    LEGAL STANDARD FOR JUDGMENT ON THE PLEADINGS

"After the pleadings are closed, but early enough not to delay trial, a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "A judgment on the pleadings is properly granted when, taking all allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." *Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co.*, 132 F.3d 526, 528 (9th Cir. 1997) (citing *McGann v. Ernst & Young*, 102 F.3d 390, 392 (9th Cir. 1996)). The Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.,* 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citation omitted). While a pleading asserting a claim need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Determining plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id..* at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

On a motion for judgment on the pleadings, a court may consider "documents referenced extensively in the complaint, documents that form the basis of plaintiff's claims, and matters of judicial notice when determining whether the allegations of the complaint state a claim upon which relief can be granted." *O'Connor v. Uber Techs., Inc.*, No. 13-3826, 2014 U.S. Dist. LEXIS 124136, at *9 (N.D. Cal. Sept. 4, 2014) (quoting *Mendelsohn v. Intalco Aluminum Corp.,* No. 06-0190, 2006 WL 1148559, at *1 (W.D. Wash. Apr. 21, 2006)). On a motion for judgment on the pleadings, the Court may also consider authentic materials that the pleadings refer to and

that are central to the claims.  *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002)).  Diamond Foods respectfully requests that the Court take judicial notice and consider the executable copies of the *Perfect Popcorn* and *iMunchies* apps that Diamond Foods will lodge with the Court at the hearing.

## IV.    HOTTRIX'S ALLEGATIONS FAIL TO STATE AS A MATTER OF LAW A VALID COPYRIGHT INFRINGEMENT CLAIM

### A.    None of the Elements in Diamond Foods' *Perfect Popcorn* That Are Allegedly Similar to *iMunchies* Are Protectable by Copyright.

"To establish [copyright] infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1174 (9th Cir. 2003).  The copyright holder must demonstrate that the material alleged to have been copied is sufficiently original to warrant copyright protection.  *Id.*  "Not every constituent element of a copyrighted work is protected by the copyright." *Erickson v. Blake*, 839 F. Supp. 2d 1132, 1136 (D. Or. 2012).  "[T]he party claiming infringement may place '*no* reliance upon any similarity in expression resulting from' unprotectable elements." *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1446 (9th Cir. 1994) (quoting *Aliotti v. R. Dakin & Co.*, 831 F.2d 898, 901 (9th Cir. 1987)) (emphasis in original).  Thus, when deciding whether a copyright claim is viable, "the court must analytically dissect the works to evaluate any similarities on an element-by-element basis" and "consider whether each alleged similarity between the works relates to a protected or to an unprotected element." *Erickson*, 839 F. Supp. 2d at 1136 (citing *Apple Computer*, 35 F.3d at 1443).  For example, "unprotected elements of a copyrighted work can include (1) ideas, as opposed to expression; (2) expressions that are indistinguishable from the underlying ideas; (3) standard or stock elements (scènes à faire); and (4) facts and other public information." *Id.*

The Ninth Circuit has made clear that a district court can dismiss a copyright infringement claim based on the pleadings: "[t]here is ample authority for holding that when the copyrighted work and the alleged infringement are both before the court, capable of examination and comparison, non-infringement can be determined." *Christianson v. West Pub. Co.*, 149 F.2d 202, 203 (9th Cir. 1945); *see also Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1139 (C.D. Cal.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2007) (granting motion to dismiss copyright infringement claim). "Judgment on the pleadings may be granted where the facts asserted by the non-moving party in its pleadings—including the attached works themselves—and all reasonable inferences from those facts, show the absence of substantial similarity." *Identity Arts v. Best Buy Entmt. Servs. Inc.*, No. 05-4656, 2007 WL 1149155, at *5 (N.D. Cal. Apr. 18, 2007). If "the allegedly similar features are not protected by copyright," the court should dismiss the copyright claim. *Gorski v. Gymboree Corp.*, No. 14-01314, 2014 U.S. Dist. LEXIS 97816, at *15-16 (N.D. Cal. July 16, 2014). In other words, "[i]f a court determines that no reasonable jury could find that the works are substantially similar, or if it concludes that the similarities pertain only to unprotected elements of the work, it is appropriate for the court to dismiss the action because, as a matter of law, there is no copyright infringement." *Bell v. Blaze Magazine*, No. 99-12342, 2001 WL 262718, at *3 (S.D.N.Y. Mar. 16, 2001).

### 1. Copyright Does Not Protect Ideas or Expression That Merges with Those Ideas.

"It is an axiom of copyright law that ideas are not protected." *Smart Inventions, Inc. v. Allied Commc'ns Corp.*, 94 F. Supp. 2d 1060, 1066 (C.D. Cal. 2000); *see also* 17 U.S.C. § 102(b). In addition, under the closely related doctrine of merger, which relates to instances where an idea and its expression are so related that they are considered merged, "courts will not protect a copyrighted work from infringement if the idea underlying the copyrighted work can be expressed in only one way, lest there be a monopoly on the underlying idea." *Satava*, 323 F.3d at 812 n.5. This includes the idea of depicting natural objects. *Id.* at 810. In *Satava*, the Ninth Circuit held that copyright does not protect an artist's idea of producing a realistic jellyfish sculpture "or to elements of expression that naturally follow from the idea of such a sculpture." *Id.* An artist may not prevent others from depicting jellyfish as they are, "with tendril-like tentacles or rounded bells," "bright colors," or vertical orientation. *Id.* Moreover, copyright does not protect logical choices to depict a jellyfish in a clear medium such as glass or to show it "almost filling the entire volume." *Id.* at 811. Although "a *combination* of unprotectable elements may qualify for copyright protection," that combination "is eligible for copyright protection only if those elements are numerous enough and their selection and arrangement

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   original enough that their combination constitutes an original work of authorship." *Id.* If the

2   elements are typical of the natural shape, the "trivial" level of originality does not confer

3   copyright protection, lest the creator have "a monopoly on the idea" of "lifelike" objects. *Id.* at

4   812 & n.5. The Ninth Circuit held "Congress did not intend for artists to fence off private

5   preserves from within the public domain, and, if we recognized Satava's copyright, we would

6   permit him to do exactly that." *Id.* Like the limited ways to depict in glass-in-glass a jellyfish,

7   "[t]he idea of a stuffed dinosaur toy can only be expressed in the form of a stuffed animal shaped

8   like a dinosaur." *Erickson*, 839 F. Supp. 2d at 1137 (citing *Aliotti*, 831 F.2d at 901).

9        Similarly, food elements that are scènes à faire[3] do not receive copyright protection if that

10   protection would allow improper monopolies of underlying ideas. *Kim Seng Co. v. J&A*

11   *Importers, Inc.*, 810 F. Supp. 2d 1046, 1057-58 (C.D. Cal. 2011). The *Kim Seng* court rejected

12   protection for food images because "allowing copyright protection for a photograph of a common

13   Vietnamese dish might give Kim Seng a monopoly over using such photographs on food

14   packages." *Id.* The court further explained that "[a]ny protectable elements of the photograph at

15   issue flow[s] necessarily from the subject matter of the photograph, *i.e.*, the Vietnamese dish, and

16   provides J&A with a defense to infringement." *Id.* Likewise, another court found no copyright

17   protection for food photographs on Chinese menus. *Oriental Art Printing, Inc. v. Goldstar*

18   *Printing Corp.*, 175 F. Supp. 2d 542, 547 n.3 (S.D.N.Y. 2001). "Even if the photographs were

19   original works capable of being copyrighted, such photographs would be unprotectible under the

20   doctrine of scenes a faire" because "each of the potentially protectible elements, *i.e.*, the

21   photographs' lighting, angle, and the choice of plates, flow[s] necessarily from the subject matter

22   of the photographs, *i.e.*, the realistic depiction of most common Chinese food dishes." *Id.*

23   "[F]inding the photographs in question to be copyrightable would . . . permit [plaintiffs] to

24   monopolize the market for printing menus that depict certain commonly served Chinese dishes.

25   Such a result was not Congress' intent in enacting the Copyright Act." *Id.* at 548.

---

26   [3] Under the scènes à faire doctrine, expressions that are "indispensable and naturally associated
27   with the treatment of a given idea are treated like ideas and are therefore not protected by
copyright." *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1175 (9th Cir. 2003) (internal quote marks
28   omitted) (holding that use of a mask by a magician revealing magic tricks constitutes scènes à
faire and thus cannot be copyright infringement).

Depictions of movements, not just static depictions, may also be unprotectable ideas. For example, the Ninth Circuit held that "established and recognized moves and motions regularly employed in the sport of karate" were elements that "necessarily follow from the idea of a martial arts karate combat game, or are inseparable from, indispensable to, or even standard treatment of the idea of the karate sport. As such, they are not protectable." *Data East USA, Inc. v. Epyx, Inc.*, 862 F.2d 204, 209 (9th Cir. 1988).

"The typical objective features to be compared when dissecting photographs include 'selection of subject, posture, background, lighting, and perhaps even perspective alone.'" *Dyer v. Napier*, No. 04-cv-0408, 2006 WL 2730747, at *5 (D. Ariz. Sept. 25, 2006) (quoting *Los Angeles News Serv. v. Tullo*, 973 F.2d 791, 794 (9th Cir. 1992)). If those "elements or themes . . . flow predictably from the underlying subject matter," they are not protectable. *Id.* at *9. For example, "reproducing the look of rustic hardwood and natural wood grain" in two-dimensional artwork does not merit copyright protection because the elements of expression naturally follow from the idea of reproducing the realistic look of the wood. *Home Legend, LLC v. Mannington Mills, Inc.*, 32 F. Supp. 3d 1273, 1282 (N.D. Ga. 2014) (finding lack of originality because copyright owner "simply attempted to recreate the look of natural, rustic wood in another medium—artwork"). "This is true regardless of the amount of effort that [the author] put into developing the design." *Id.* at n.7.

## 2.    Copyright Does Not Protect Hottrix's Idea of Displaying Food or Objects on a Mobile Device Screen.

Based on the pleadings, the copying that Hottrix alleges is simply the realistic depiction of popcorn on the screen of a mobile device. *See, e.g.*, Countercls. ¶ 5 (identifying expression as "popcorn popping and being contained within the video screen of a mobile device"). This is nothing more than an idea. As the screenshots of *Perfect Popcorn* and *iMunchies* show (Compl. ¶¶ 14–15), the popcorn images are not identical, and Hottrix does not allege that any piece of popcorn is the same in both apps. Instead, Diamond Foods and Hottrix each created images of popcorn to display on screen. Hottrix aims to make its popcorn look natural rather than fanciful because the point of the *iMunchies* trick is to make it appear to viewers that real objects are inside

Fenwick & West LLP
Attorneys at Law
San Francisco

the mobile device.  Hottrix did not add any originality to the popcorn shapes.  Just as the

copyright owners in *Satava*, *Aliotti*, *Kim Seng*, and *Oriental Art* had no right to prevent others

from making their own depictions of animals or foods, Hottrix cannot monopolize the right to

make realistic popcorn images on mobile devices or any other medium.  *See Satava*, 323 F.3d at

810; *Aliotti*, 831 F.2d at 901; *Kim Seng*, 810 F. Supp. 2d at 1057-58; *Oriental Art*, 175 F. Supp.

2d at 547-48.  Whatever expression might exist in the popcorn images follows naturally from the

idea of reproducing the realistic look of popcorn in a video medium.  That idea is not protectable

by copyright.  *See Home Legend*, 32 F. Supp. 3d at 812.

Hottrix also has no copyright protection over the idea of the screen filling up.  Indeed, the

practice of using the entire screen space for images, videos, or other content is inherent to mobile

devices with their small screens.  *See Satava*, 323 F.3d at 811 (rejecting alleged originality in

choice to fill up glass medium). Since the idea of popcorn filling the screen, as well as the

realistic expression that follows from that idea, is unprotectable, the Court should dismiss

Hottrix's copyright claim.  *See Gymboree*, 2014 U.S. Dist. LEXIS 97816, at *15-16.

Moreover, the idea behind each app's depiction of popcorn is not even identical.  *Perfect

Popcorn* "simulates popcorn being popped."  Countercls. ¶ 35.  To do so, Diamond Foods'

*Perfect Popcorn* displays *unpopped kernels* in the process of popping, with the pile of popped

popcorn steadily growing in height inside the simulated interior of a microwave popcorn bag

(Compl. ¶¶ 14–15). In contrast, Hottrix's *iMunchies* launches already popped popcorn into the

screen of the mobile device.  Countercls. ¶ 25.  Just as kernels pop at various times during the

heating process in real life, *Perfect Popcorn* shows a mix of kernels in various states of popping.

Instead, Hottrix shows only previously popped popcorn.  This fundamental lack of similarity

warrants dismissal of Hottrix's copyright claim.  *See Identity Arts*, 2007 WL 1149155, at *5.

**B.      Aside from the Idea of Showing Popcorn, the Pleadings Establish That *Perfect Popcorn* and *iMunchies* Are Not Similar.**

The pleadings do not identify any similarity in the apps besides the display of the popcorn.

No relevant similarity exists.  The perspective in *Perfect Popcorn* is from the inside of a

microwave popcorn bag, with the interior of the bag as the background.  Compl. ¶ 15; Countercls.

¶ 35.  A beige area is above the bag and provides the user with instructions or information.  Compl. ¶ 15.  The lighting is bright and without any heavy shadowing.  *Id.*  At first, *Perfect Popcorn* shows unpopped kernels, then popping kernels.  Gradually a mix of both popped and unpopped kernels as the popcorn inside of the bag fills the screen from the bottom of the bag to the top.  *Id.*  The popcorn then does not move around, but instead the app switches to a screen instructing the user to stop the microwave from cooking the real popcorn any further.  *Id.*

iMunchies* shows fully popped popcorn against a black (or other user selected) background, with no semblance of any container other than the mobile device screen.  Countercls. ¶ 25; Declaration of Andrew P. Bridges ("Bridges Decl.") ¶ 2, Exh. 1 [Hottrix video].  The popcorn occupies the screen primarily by *iMunchies* launching it from the bottom of the screen after the user taps the mobile device.  *Id.*  The lighting appears to be from the side, creating shadows on the popcorn.  *Id.*  The popcorn then moves as the user (or a simulation of the user's fingers) interacts with the popcorn, seemingly picking out a piece or pouring the popcorn from the screen.  *Id.*; Compl. ¶ 20.

The characteristics of photographic images that courts have found potentially original and protectable under copyright all differ greatly from the images in which *iMunchies* claims protection.  In *Napier,* the court analyzed whether the allegedly infringing work (depicting a mountain lion carrying a cub while perched on a rock) copied the copyrighted photograph's choices of background, location, perspective, lighting/shading, timing, angle, framing, film, and camera.  *Napier*, 2006 WL 2730747, at *5 (finding no similarity except unprotectable "expressions and features displayed by mountain lions in nature for all observers").  As the screenshots in the pleadings show, the popcorn images in *Perfect Popcorn* have a completely different background and choice of location—the inside of a microwave popcorn bag (Countercls. ¶ 35)—from the *iMunchies* images, which have a black background like the blank screen of the mobile device (*id.* ¶ 25).  The *Perfect Popcorn* images are well-lit and from the perspective/angle of being inside the bag, whereas the *iMunchies* images are darkly lit, heavily shadowed, and from the perspective/angle of someone looking from outside the "container" of the mobile device.  *Id.* ¶¶ 3, 25, 35.  The Pop Secret bag, as well as informational screens on a beige backdrop, frame the

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

popcorn in *Perfect Popcorn* (Compl. ¶ 15), whereas nothing except the device screen's outline frames the *iMunchies* images (Countercls. ¶ 25). The timing is also completely different: *Perfect Popcorn* shows unpopped kernels before heating, those kernels and popped corn in mid-flight with significant separation as they pop, and a mix of unpopped and popped popcorn (Compl. ¶ 15), but *iMunchies* shows only previously popped popcorn launched onto the black screen (Countercls. ¶ 25). Furthermore, the finger movements, shaking, and other interactions in the *iMunchies* "[h]alf magic trick, half visual-gag" (Compl. & Answer ¶ 18) are absent from the non-interactive popcorn display in *Perfect Popcorn.*

Nor does *Perfect Popcorn* have the sound effects or portability that *iMunchies* does. Answer ¶ 22. As a cooking app, *Perfect Popcorn* requires audio *input* from a microwave next to it and "listen[s] for the cooking to complete.". Compl. ¶¶ 4, 15. In contrast, Hottrix alleges that *iMunchies* offers sound effects (Answer ¶ 22); it does not require or process any audio input or need to be next to a microwave. Even if Hottrix's copyrights cover the *iMunchies* sounds as it alleges, the pleadings show no possible infringement of those sounds. And the ability of a user to run *iMunchies* in any setting further differentiates it from a popcorn timer.

## V.   THE PLEADINGS ESTABLISH THAT DIAMOND FOODS DOES NOT INFRINGE ANY PROTECTABLE TRADE DRESS OF HOTTRIX[4]

Trade dress "traditionally consisted of packaging, but in modern parlance includes the design and shape of the product itself." *Walker & Zanger, Inc. v. Paragon Indus., Inc.*, 549 F. Supp. 2d 1168, 1173 (N.D. Cal. 2007). Trade dress analysis focuses on distinctiveness, because "without distinctiveness the trade dress would not 'cause confusion . . . as to the origin, sponsorship, or approval of [the] goods,' as the section requires." *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 210 (2000). The Supreme Court warned that, for trade dress based on a product's design, "[c]onsumers should not be deprived of the benefits of competition with regard to the utilitarian and esthetic purposes that product design ordinarily serves." *Id.* at 213. Accordingly, courts recognize a strong policy against monopolization of ideas when a product

---

[4] The causes of action for unregistered trade dress infringement under the Lanham Act and common law are "substantially similar." *Lanard Toys, Ltd. v. Novelty, Inc.*, 511 F. Supp. 2d 1020, 1041-42 (C.D. Cal. 2007)).

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

design is the alleged trade dress.  "While most trademarks only create a monopoly in a word, a phrase or a symbol, granting trade dress protection to an ordinary product design . . . create[s] a monopoly in the goods themselves."  *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 115 (2d Cir. 2001) (internal quotation marks omitted).  This policy warrants "particular caution when extending protection to product designs."  *Id.* at 114 (citing *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 380 (2d Cir. 1997) (finding no protectable trade dress in a furniture product line built with bent tubing and soft finishes)).  "[C]ourts have been reluctant to extend trade dress protection to a product's design (as opposed to its packaging) and to an entire line of products (as opposed to a single product)."  *Nat'l Lighting Co. v. Bridge Metal Indus.*, 601 F. Supp. 2d 556, 561 (S.D.N.Y. 2009).

Allowing this type of monopoly on grounds of trade dress is dangerous because trademark protection can last for an unlimited period.  *Jeffrey Milstein*, 58 F.3d at 32.  "[O]verextension of trade dress protection can undermine restrictions in copyright and patent law that are designed to avoid monopolization of products and ideas.  Consequently, courts should proceed with caution in assessing claims to unregistered trade dress protection so as not to undermine the objectives of these other laws."  *Id.*

### A.    The Trade Dress That Hottrix Claims Is a Generic Idea and Not Protectable in Any Circumstances.[5]

Hottrix bases its trade dress claim not on product packaging, but on the design of its product.  Countercls. ¶¶ 3, 29.  In *Samara*, the Supreme Court held that "for infringement of unregistered trade dress under § 43(a) of the Lanham Act, a product's design is distinctive, and therefore protectible, only upon a showing of secondary meaning."  *Samara*, 529 U.S. at 216.  But "generic product designs are unprotectible even upon a showing of secondary meaning."  *Walker & Zanger*, 549 F. Supp. 2d at 1174.  This rule "guards against the acquisition of broad trademark exclusivities that bear little relation to consumer confusion."  *Id.*  The Supreme Court did not "except product design from the nongenericness requirement that limits protection of

---

[5] Courts may grant Rule 12(c) motions against alleged trade dress claims.  *See, e.g., Carson Optical, Inc. v. Prym Consumer USA, Inc.*, 11 F. Supp. 3d 317, 339 (E.D.N.Y. 2014) (granting defendant's 12(c) motion without leave to amend).

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

other types of marks." *Big Island Candies, Inc. v. Cookie Corner*, 269 F. Supp. 2d 1236, 1241

(D. Haw. 2003).

For example, "if the definition of a product design is overbroad or too generalized," it is

too generic to merit trade dress protection. *Walker & Zanger*, 549 F. Supp. 2d at 1174 (no

protection for tiles with "look of stone carving" or "rustic look of hand-shaped tiles"). Trade

dress does not protect "an idea, a concept, or a generalized type of appearance." *Jeffrey Milstein*,

58 F.3d at 32–33. The trade dress owner has the burden to show that its trade dress is not generic.

*Big Island Candies*, 269 F. Supp. 2d at 1242; *Filipino Yellow Pages, Inc. v. Asian Journal*

*Publ'ns, Inc.,* 198 F.3d 1143, 1146 (9th Cir. 1999) ("If a . . . mark is not federally registered, . . .

the plaintiff has the burden of proving nongenericness once the defendant asserts genericness as a

defense.").

In *Jeffrey Milstein*, a plaintiff greeting card maker claimed a trade dress of "straight-on

color photographs of animals, plants, people or objects, die-cut to the shape of the image of the

photograph, with the inside of the card being a blank white color." *Jeffrey Milstein*, 58 F.3d

at 30. The Second Circuit held that the plaintiff's trade dress was generic and rejected any

"protection for its general idea of creating cards out of die-cut photographs." *Id.* at 33. Although

the plaintiff's designs had "initial novelty within the greeting card industry," the court recognized

that the plaintiff was

> effectively seeking protection for an idea or concept—die-cut photographic
> greeting cards. It is clear that the first manufacturer to create a die-cut
> photographic product could not have claimed trade dress protection for all die-cut
> photographic designs, since a trade dress described as consisting solely of die-cut
> photographs would simply "refe[r] to the genus of which the particular product is
> a species."

*Id.* (citations omitted). Likewise, "the first company to depict a heart and an arrow on Valentine's

cards or to produce cards depicting tabby cats could not seek protection for those designs because

they are concepts, defined abstractly." *Id.*

In *Big Island Candies*, the court found that trade dress for chocolate-dipped shortbread

cookies is generic and thus "not protectable even upon a showing of secondary meaning." *Big*

*Island Candies*, 269 F. Supp. 2d at 1242. "It is irrelevant whether or not the party asserting trade

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

dress is the first to use the idea or concept for which it seeks protection." *Id.* at 1243. Other foods, such as popcorn, would be similarly generic and unprotectable. Moreover, Hottrix does not even have a brand of popcorn that it sells or markets. It sells a humorous app that depicts popcorn as one of several snack foods.

Hottrix does not claim anything distinctive or unusual about the look or design of the popcorn that *iMunchies* displays, or about the look or design of the other food items that its other apps (*e.g.*, *iBeer* and *iMilk*) display. Instead, Hottrix claims its trade dress is a screen acting as a container filling up with food or drink, which is the very essence of its "digital visual tricks." Countercls. ¶¶ 48, 59. Regardless of whether Hottrix's food apps were novelties when it introduced them, the idea of displaying food images in apps on mobile devices is no more protectable than the idea of putting hearts, tabby cats, or die-cut photo images on greeting cards. *See Jeffrey Milstein*, 58 F.3d at 33. Conferring protection over such a generic product design would inappropriately allow Hottrix to prevent anyone else from offering software or apps that show realistic, common food items on mobile device screens. *See id.* Thus, Hottrix's "trade dress claims raise a potent risk that relief will impermissibly afford a level of 'protection that would hamper efforts to market competitive goods.'" *Yurman*, 262 F.3d at 114 (quoting *Landscape Forms*, 113 F.3d at 380).

Hottrix's alleged trade dress is not a marketing brand, unique appearance, or symbol of identity. Hottrix's trade dress is too broad to be protectable, as it would cover all other mobile products with popcorn. The *Landscape* court warned that "[t]he level of generality at which a trade dress is described, as well as the fact that a similar trade dress is already being used by manufacturers of other kinds of products, may indicate that that dress is no more than a concept or idea to be applied to particular products." *Landscape Forms*, 113 F.3d at 380. Hottrix's insubstantial description of its trade dress as the display of popcorn as inside a mobile device underscores that Hottrix's trade dress is generic and no more than a concept or idea.

**B.    Nothing in the Pleadings Plausibly Shows Any Distinctiveness or Secondary Meaning in the Trade Dress That Hottrix Claims.**

In addition to Hottrix's "trade dress" being generic, the pleadings show no plausible basis

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

for any distinctiveness or secondary meaning in that unregistered trade dress.  "After *Samara*, no product configuration can meet the distinctiveness requirement of the Lanham Act by a showing of inherent distinctiveness but must rely instead on acquired distinctiveness, *i.e.*, a showing of secondary meaning." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc*., 280 F.3d 619, 637 (6th Cir. 2002).  A "product design plaintiff . . . must always make the . . . more difficult showing" that the "primary significance of [the mark] is to identify the source of the product rather than the product itself." *Yurman*, 262 F.3d at 115.  Nothing about the display of popcorn in *iMunchies*, the alleged trade dress, can plausibly cause a consumer to think of Hottrix specifically.[6]  Hottrix builds its identity as a purveyor of tricks.  Answer ¶¶ 3, 21; Countercls. ¶¶ 1, 2, 15, 16.  Hottrix's alleged trade dress, like the display of popcorn in *Perfect Popcorn*, has no distinctive association with tricks.  Based on the pleadings, Hottrix's other products do not even involve popcorn.  Hottrix's other products—*iMilk* and *iBeer*, "Hottrix's flagship 'digital visual trick'" (Countercls. ¶ 16)—depict liquids.  Moreover, *iMunchies* offers popcorn as only one of several snack-food selections in the app, so popcorn has no unique association with the app itself, much less Hottrix.  Differences in the design of various products undermine the requirement of a consistent, overall look in order to establish that the look qualifies as trade dress, and Hottrix's wide variation in designs undermines its trade dress claim here.  *See Walt Disney Co. v. Goodtimes Home Video Corp.*, 830 F. Supp. 762, 766-68 (S.D.N.Y. 1993).  Accordingly, Hottrix's other products and *iMunchies* itself demonstrate the implausibility that consumers would perceive Hottrix as the source of origin of a product to help consumers time their microwave cooking of popcorn appropriately.

Any Hottrix elements that might be distinctive do not relate to *Perfect Popcorn* and present no possible likelihood of confusion among consumers.  Hottrix's other products, such as *iMilk*, *iChocolate*, *iSoda*, and *iBeer* involve not popcorn but beverages.  Even the names relate to liquids, not to popcorn.  Hottrix itself has represented in other litigation that its trade dress rights extend to trick-related material.  Bridges Decl. ¶ 3, Exh. 2 [*The Hershey Company v. Hottrix LLC*,

---

[6] In contrast, Diamond Foods produces, markets, and sells Pop Secret popcorn and created and released its *Perfect Popcorn* app to help its consumers make a dish of its microwaved popcorn. Compl. ¶ 12.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    No. 10-01178 (M.D. Pa.), Dkt. 42, Brief in Opp'n Mot. to Dismiss and Judgment on the

2    Pleadings].  There Hottrix described its liquid-related trade dress: "There are numerous ways to

3    express the *idea* of 'drinking' from an iPhone; however, Hottrix has expressed this idea in a

4    certain sequence and utilizing certain elements of sound and visual presentation."  Hottrix added

5    that its expressions include "pouring" the beverage and a "finishing sound effect."  *Id.*  Hottrix

6    has made no such allegations here.  It is obvious why.  *Perfect Popcorn* has no sound effects for

7    its popcorn popping because, instead of tricking users into thinking there is popcorn ("select

8    various sound effects," Answer ¶ 22), it detects actual popping so it can simulate popping

9    popcorn.  Moreover, unlike the physical manipulation possible in *iMunchies* (Answer ¶¶ 3, 21-22)

10   and other Hottrix products, *Perfect Popcorn* does not receive input from the user's touch

11   interaction with the mobile device.

12        Moreover, *Perfect Popcorn* is a useful timing aid for cooking *popcorn* that Diamond

13   Foods—a company that manufactures and sells food products—categorizes and sells in the "Food

14   and Drink" section of the iTunes store.  In contrast, Hottrix—a company not in the business of

15   selling popcorn or any other food—categorizes and sells the *iMunchies* trick app in the "Games"

16   section of the iTunes store.  Hottrix brands the *iMunchies* product as trickery rather than

17   establishing any usefulness in mobile popcorn popping.  Hottrix caters to "magicians and

18   hipsters."  Answer ¶ 22.  Magicians and hipsters use Hottrix products because the products

19   facilitate and augment the user's own sleight-of-hand trickery.  For example, a user can conceal a

20   snack food underneath the user's mobile device and draw it out as the simultaneous image of the

21   snack food leaves the screen of the mobile device.  Answer ¶ 3.  The magicians and hipsters

22   would not be able to put their skills to work in a program like *Perfect Popcorn* that cannot receive

23   user input but simply operates next to a real microwave oven and simulates popping kernels

24   inside a popcorn bag in the course of providing advice on when to stop the cooking.

25        **C.    The Trade Dress That Hottrix Claims Is Also Functional and Thus Invalid on
          Additional Grounds**.

26

27        Hottrix also has the burden to prove that its unregistered trade dress is not functional.  *See*

28   15 U.S.C. § 1125(a)(3).  "Functional features of a product are features '*which constitute the*

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*actual benefit that the consumer wishes to purchase,* as distinguished from an assurance that a particular entity made, sponsored, or endorsed a product.'" *Vuitton et Fils S.A. v. J. Young Enters., Inc.*, 644 F.2d 769, 774 (9th Cir. 1981) (emphasis added) (quoting *Int'l Order of Job's Daughters v. Lindeburg & Co.*, 633 F.2d 912, 917 (9th Cir. 1980)).  In this test, the term "'functional' means not that a feature serves a function; it means that the feature is one that competitors would find necessary to incorporate into their product in order to be able to compete effectively." *Vaughan Mfg. Co. v. Brikam Int'l, Inc.*, 814 F.2d 346, 349 (7th Cir. 1987); *see also Rachel v. Banana Republic, Inc.*, 831 F.2d 1503, 1507 (9th Cir. 1987) (holding that plaintiff's "realistic reproductions of animals" for décor were functional and lacked trade dress protection).

Any "trade dress protection for product design . . . entails a greater risk of impinging on ideas as compared with protection of packaging or labeling." *Yurman*, 262 F.3d at 116.  Thus, the "test of nonfunctionality in trade dress claims that are based on product design is even more critical than in trade dress claims based on packaging, because a monopoly right in the design of the product itself is more likely to preclude competition." *Id.*  "As with the overbreadth element, rigorous application of the requirement of non-functionality is necessary to avoid undermining the carefully circumscribed statutory regimes for the protection of useful and ornamental designs under federal patent and copyright law." *Id.*

As the *iMunchies* name suggests, consumers purchase Hottrix's apps for the benefit of being able to make snack food appear on their mobile devices.  Accordingly, that display of snack food images is "functional" and not protectable as trade dress. *Vuitton et Fils*, 644 F.2d at 773-74.  Hottrix's marketing of *iMunchies* underscores the functionality of the food depictions. Hottrix's products are "digital visual tricks."  Answer ¶ 3.  Hottrix's advertising of *iMunchies* stresses its "motion control snacks," "through-screen action," and "editable effects" (*id.*), which heighten the seeming realism (actually a deception) of *iMunchies*' on-screen snacks.  Hottrix uses its depictions of popped popcorn or other objects in a functional way to implement a process to trick the user's audience, rather than to signify a brand of Hottrix products.  A realistic depiction that consumers want because of the realistic depiction is not protectable under trade dress. *See Rachel*, 831 F. 2d at 1507.  Moreover, nothing in the pleadings shows that Hottrix has a specific,

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   unique brand associated with popping popcorn on a mobile device.  To the contrary, Hottrix self-

2   brands itself more generally as a producer of visual tricks catering to "magicians and hipsters."

3   Answer ¶¶ 3, 22.

4       *Perfect Popcorn* also reveals the functional nature of the way it displays popcorn images.

5   While the app detects the sound and frequency of popcorn popping in the microwave, the app

6   provides visual cues to the user to simulate the progress of the cooking.  These visual cues

7   include not only text but also a simulation of the inside of the popcorn bag.  Compl. ¶ 15.  As

8   more popcorn fills the bag (and the screen), the user can see that the remaining time is dwindling

9   and that it will soon be the moment to press the stop button on the microwave.  *See id.*  It is the

10  popcorn-bag equivalent of an hourglass.  Allowing Hottrix to monopolize the right to fill a screen

11  with popcorn images would prevent imaginative designs that serve vastly different purposes.[7]

12      **D.    The Pleadings Establish That *Perfect Popcorn* Does Not Infringe Any Hottrix
             Trade Dress Because It Does Not Display Popcorn to Identify the Source of**
13           **the App**.

14      Diamond Foods does not use the display of popcorn within its app to identify the source

15  of the app.  "[W]hile any number of activities may be 'in commerce' or create a likelihood of

16  confusion, no such activity is actionable under the Lanham Act absent the 'use' of a trademark."

17  *Site Pro-1, Inc. v. Better Metal, LLC*, 506 F. Supp. 2d 123, 126 (E.D.N.Y. 2007) (citation

18  omitted).  "The key question is whether the defendant placed plaintiff's trademark on any goods,

19  displays, containers, or advertisements, or used plaintiff's trademark in any way that indicates

20  source or origin."  *Id.* at 127.

21      When a user operates *Perfect Popcorn*, the app displays images of popcorn to let the user

22  know the cooking status of the real bag of popcorn.  This display within the app is not a use that

23  indicates source or origin.  Without this type of source-identifying use, the display cannot create

24  liability under the Lanham Act.

25      **E.    The Pleadings Establish That No Consumer Confusion Is Possible Because
             Any Protectable Hottrix Trade Dress Is Absent from *Perfect Popcorn*.**
26
      For the reasons above, Hottrix has no protectable elements of trade dress, but even if it

27

28  ---
    [7] Hottrix does not even incorporate popcorn popping, but rather fully popped popcorn, making its
    trade dress claim far more overreaching than the images that *iMunchies* depicts.  Answer ¶ 20.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

did, *Perfect Popcorn* poses no likelihood of consumer confusion. "The test for likelihood of confusion is whether a reasonably prudent consumer in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks." *Hansen Beverage Co. v. Nat'l Beverage Corp.*, 493 F.3d 1074, 1077 n.5 (9th Cir. 2007). Confusion must be "probable, not simply a possibility." *Id.* (citing *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 842 (9th Cir. 2002) (*per curiam*)). "If goods or services are totally unrelated, there is no infringement because confusion is unlikely." *Murray v. Cable Nat'l Broad. Co.*, 86 F.3d 858, 861 (9th Cir. 1996) (citing *AMF v. Sleekcraft Boats*, 599 F.2d 341, 348 (9th Cir. 1979)).

Any plausible trade dress in *iMunchies* trade dress is unrelated and dissimilar to *Perfect Popcorn*. *Perfect Popcorn* is a timing aid for cooking microwave popcorn. Diamond Foods offers its app under the "Food and Drink" department of the iTunes store. Answer ¶ 4. In contrast, *iMunchies* is a "[h]alf magic trick, half visual-gag" app for entertainment and having no utility, listed in the category "Games." Answer ¶¶ 3, 18. Because these products are unrelated, "there is no likelihood of consumer confusion as a matter of law." *See Murray*, 86 F.3d at 861.

*iMunchies* does not target *Perfect Popcorn*'s consumer market. Like Hottrix's other products, *iMunchies*' target audience is "magicians and hipsters." Answer ¶ 22. *Perfect Popcorn* targets purchasers of Diamond Foods' microwave popcorn. Therefore, "the way these services [are] used, and the consumers who use[] them, [are] so distinct that the court [can] conclude[] no likelihood of confusion c[an] exist." *Mach. Head v. Dewey Global Holdings, Inc.*, No. C 99-04326 CW, 2001 WL 1747180, at *7 (N.D. Cal. Dec. 13, 2001) (citing *Murray*, 86 F.3d 858).

## VI.   HOTTRIX'S STATE-LAW CLAIMS HAVE THE SAME GROUNDS AS ITS INFRINGEMENT CLAIMS AND FAIL AS WELL

### A.   The Copyright Act Preempts Hottrix's State-Law Claims.

"Where claims of . . . interference are based on the misappropriation or improper use of one's exclusive right to exploit a protected work, such a claim essentially restates the infringement claim and is preempted." *Wild*, 788 F. Supp. 2d at 1110. Similarly, "with respect to the UCL claims under B & P Code § 17200, where the alleged improper business activity is the act of copyright infringement, the claim is preempted." *Id.* at 1111.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  Hottrix's only allegation of "intentional conduct" (Countercls. ¶ 75) for its intentional

2  interference with prospective economic advantage claim is "undoubtedly draw[ing]" customers

3  with its *Perfect Popcorn* app that appears to have the content of "popcorn popping and being

4  contained in the full video screen." *Id*. ¶ 73.  For its unfair competition claim, Hottrix refers only

5  to "defendants' activities, alleged above, including but not limited to, its unauthorized use and

6  infringement of the copyrights and trade dress embodied in the iMunchies Materials, and

7  intentional interference with Hottrix's prospective economics [sic] relationships." *Id*. ¶ 82.  But

8  Hottrix's counterclaim section titled "Defendants' Wrongful Conduct" states merely that "[t]he

9  Perfect Popcorn App simulates popcorn being popped and contained inside the full screen of a

10  mobile device." *Id*. ¶ 35.  The only other "conduct" in this section is that *Perfect Popcorn* is

11  available and appears in app store search results based on the word "popcorn." *Id*. ¶ 37.

12  Accordingly, the basis of both Hottrix's intentional interference and unfair competition

13  claims is that Diamond Foods sells a product that displays popping popcorn on a mobile device.

14  This restates Hottrix's copyright infringement claim that Diamond Foods has created and

15  distributed a derivative work of *iMunchies* materials by creating and distributing an application

16  that displays popcorn popping on a mobile device.  Hottrix has raised no grounds beyond its

17  claim under the Copyright Act, which thus preempts the state-law claims.  In *Carson Optical*, 11

18  F. Supp. 3d at 336 n.10, the Court granted defendant judgment on the pleadings on a claim of

19  tortious interference with prospective business relations because "plaintiffs have again failed to

20  allege any harms in their complaints that are separate from the alleged copying of the

21  materials . . . .  Accordingly, [] a [modified] claim would fall within the ambit of the Copyright

22  Act and be preempted."  Similarly, in *NetApp, Inc. v. Nimble Storage, Inc*., No. 5:13-cv-05058,

23  2015 U.S. Dist. LEXIS 11406, at *77 (N.D. Cal. Jan. 29, 2015), the court found that the

24  Copyright Act preempted unfair competition claims arising from the defendant's alleged copying

25  of the plaintiff's software.  Finally, in *Smith & Hawken, Ltd. v. Gardendance, Inc*., No. 04-1664,

26  2004 U.S. Dist. LEXIS 22934, at *21 (N.D. Cal. Nov. 5, 2004), the court granted defendant's

27  motion to dismiss unfair competition claims due to "failure to allege an 'extra element' to

28  distinguish this claim from a copyright infringement claim."

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

B.      **Apart from Preemption, Hottrix's State-Law Claims Have the Same Grounds as Its Infringement Claims and Fail as Well.**

1.      **Hottrix bases its interference claim on infringement and alleges no independent wrongful act.**

Even if the Copyright Act did not preempt Hottrix's state-law claims, the state-law claims fail for the same reasons as Hottrix's infringement claims.  Hottrix has raised no grounds for its interference claim beyond alleging the display of popping popcorn contained inside the full screen of a mobile device.  Countercls. ¶ 73.  A claim of intentional interference with prospective economic advantage requires, among other things, "economic harm to the plaintiff proximately caused by the defendant's wrongful act, including an intentional act by the defendant that is designed to disrupt the relationship between the plaintiff and a third party."  *See Architectural Mailboxes, LLC v. Epoch Design, LLC*, No. 10-cv-974, 2011 U.S. Dist. LEXIS 46180, at *15-16 (S.D. Cal. Apr. 28, 2011) (citing *Edwards v. Arthur Andersen LLP,* 44 Cal.4th 937, 944 (2008)).  Hottrix does not allege an independent wrongful act by Diamond Foods beyond producing and distributing *Perfect Popcorn*.  Thus, even without preemption, the claim depends upon Hottrix's having a valid copyright or trade dress for popcorn popping and appearing inside a mobile device, or there is no wrongful conduct.

2.      **Hottrix bases its unfair competition claim on infringement and alleges no independent unfair conduct.**

Similarly, Hottrix's only ground for unfair competition is Diamond Foods' making *Perfect Popcorn* available.  Countercls. ¶¶ 82-83.  Because *Perfect Popcorn* does not violate any of Hottrix's rights, Diamond Foods' marketing of *Perfect Popcorn* cannot be unfair.  The Supreme Court of California has clarified that "unfair" in this context requires "conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition."  *Cel-Tech Comm'ns, Inc. v. Los Angeles Cellular Tel.* Co., 20 Cal.4th 163, 187 (1999).  Hottrix has alleged no unique ground that Diamond Foods has acted unfairly other than by creating and distributing *Perfect Popcorn*.  Without underlying infringement, it is fair for a search for the word "popcorn" to return Diamond Foods' *Perfect*

1    *Popcorn*.  Answer ¶ 24; Countercls. ¶ 37.

2         **C.    Hottrix's Interference Claim Also Fails Because It Does Not Plead Essential**
      **Elements Such as an Existing Relationship Between It and a Specific Third**
3         **Party.**

4         Hottrix's allegations involving prospective customers are insufficient to support its

5    interference claim.  A claim for intentional interference with prospective economic advantage

6    also requires, among other things, 1) an economic relationship between plaintiff and a third party,

7    with the probability of future economic benefit to the plaintiff, 2) defendant's knowledge of the

8    relationship, and 3) actual disruption of the relationship.  *See Architectural Mailboxes*, 2011 U.S.

9    Dist. LEXIS 46180, at *15-16 (citing *Edwards,* 44 Cal.4th at 944).  Hottrix has pled none of

10   these.  As to the requisite element of actual disruption to the relationship, "while Plaintiff may

11   have a 'speculative expectation that a potentially beneficial relationship [will] eventually arise,'

12   that expectation is insufficient to state a claim for intentional interference with prospective

13   economic advantage."  *Id*.  The *Architectural Mailboxes* court dismissed the plaintiff's intentional

14   interference claim because the plaintiff did not allege that *existing* customers were "diverted to

15   defendant's website instead of Plaintiff's website," and the plaintiff therefore did not allege an

16   *actual* disruption.  *Id*.  Likewise, here Hottrix alleges that it has "potential customers"

17   (Countercls. ¶¶ 72, 74-75) to whom it markets *iMunchies* in the iTunes store, but California

18   courts do not accept prospective or potential customers as a basis for actual disruption of

19   prospective economic advantage.  This potential harm, or "interference with the market" theory of

20   liability, "by itself, is insufficient as a matter of law to show [plaintiff] had an economic

21   relationship with a prospective buyer which was reasonably likely to produce a future beneficial

22   sale of its property."  *Westside Ctr. v. Safeway Stores 23, Inc*., 42 Cal. App. 4th 507, 528 (1996).

23        Hottrix's allegations involving previous customers are also inadequate for its interference

24   claim.  Hottrix's statement that it has "ongoing business relationships with its current customers,

25   who tend to buy more than one Hottrix product" (Countercls. ¶ 71) fails to mention or define a

26   single, concrete economic relationship that Diamond Foods has interfered with.  Similarly,

27   Hottrix's statement that Diamond Foods "knew or should have known of Hottrix's economic

28   relationships with its existing…customers" (Countercls. ¶ 74) fails to allege constructive

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  knowledge of any particular customer relationship. Hottrix's interference claim is therefore

2  invalid on its face in addition to duplicating and relying upon Hottrix's failing infringement

3  claims.

4  <u>**CONCLUSION**</u>

5  For all of the foregoing reasons and in reliance on the allegations and admissions in the

6  pleadings, Diamond Foods respectfully requests that the Court enter judgment in favor of

7  Diamond Foods on both its claims and Hottrix's counterclaims.

8  Dated:    April 22, 2015                    FENWICK & WEST LLP

9

10                                          By: */s/Andrew P. Bridges*

11                                          Andrew P. Bridges

                                            Attorneys for Plaintiff and Counterclaim Defendant
12                                          DIAMOND FOODS, INC.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO