# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

DIAMOND FOODS, INC.,

          Plaintiff,

    v.

HOTTRIX, LLC,

          Defendant.

Case No.  14-cv-03162-BLF

**ORDER DENYING PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S AMENDED COUNTERCLAIMS AND MOTION FOR JUDGMENT ON THE PLEADINGS**

[Re:  ECF 47]

      This is a case about two software applications for mobile devices ("apps") that depict popcorn. Plaintiff and Counter-Defendant Diamond Foods, Inc. ("Plaintiff") offers an app in the "Food & Drink" category of app stores that depicts popcorn popping, which Plaintiff describes as a tool to assist in microwaving popcorn to perfection. Defendant and Counter-Claimant Hottrix, LLC ("Defendant") offers an app in the "Game" category that enables users to do tricks with snack foods, including popcorn. Plaintiff filed this suit as a declaratory action, claiming that it does not infringe Defendant's trade dress or copyrights, and Defendant counterclaimed. Plaintiff now asks the Court to dismiss Defendant's counterclaims and grant judgment in its favor on its declaratory relief action. As stated below, although the Court agrees with many of Plaintiff's arguments, it DENIES the motion because none of the asserted claims can be dismissed in their entirety.

## I.  BACKGROUND

### A.  Plaintiff's Allegations, Admitted by Defendant

      Plaintiff alleges and Defendant admits the following facts, which provide background and are relevant to the Motion for Judgment on the Pleadings. Plaintiff released "Perfect Popcorn" as a

United States District Court
Northern District of California

1  free app in the "Food & Drink" category on app stores. Compl. ¶¶ 4, 12, ECF 1. [1] The app displays

2  a visual simulation of popcorn kernels popping inside a user's mobile device. *Id.* ¶¶ 4, 15.

3        Defendant Hottrix, LLC, sells apps that constitute "[h]ilarious gags and mystifying tricks,"

4  including "iMunchies," which it lists in the "Games" category of Apple's app store. *Id.* ¶¶ 3, 17.

5  iMunchies works as follows. First, the user can select a snack or object from a list that includes

6  popcorn, M&Ms, "Healthy Nutmix," "GummiBears," cough drops, chewing gum, money, and

7  other objects. *Id.* ¶ 19. When a user selects popcorn, fully popped kernels appears on the user's

8  mobile device screen. *Id.* ¶ 20. No unpopped kernels are depicted. *Id.* ¶ 20.

9        The user can then do several visual gags with the popcorn images. For example, the user

10  can make a customizable finger and thumb appear at the top of the device and appear to pull a

11  piece of popcorn upward, allowing the user to convince viewers that the on-screen fingers are his

12  or her real fingers. *Id.* ¶¶ 21, 22. The trick is even more believable if the user has an actual piece of

13  popcorn. *Id.* ¶ 21. In addition, the user can tilt the device to make the popcorn appear to pour from

14  the screen into his/her mouth, and can choose sound effects. *Id.* ¶ 22. The app also offers "[e]xpert

15  video instructions for magicians and hipsters." *Id.* ¶ 22. Defendant claims copyrights in iMunchies

16  software (U.S. Copyright Registration No. TX 7-058-469). *Id.* ¶ 23; *see also* Am. Countercl. ¶ 25.

17        Perfect Popcorn and iMunchies are both available on Apple's iTunes store. *Id.* ¶ 24. As

18  noted above, the two apps are listed in different categories. *Id.* ¶¶ 3-4. In addition, the lists of apps

19  that users "also bought" with each app contain no overlapping apps; the list for iMunchies consists

20  entirely of games, while Perfect Popcorn's list is exclusively food and drink apps. *Id.* ¶ 24.

21        On June 23, 2014, Defendant sent Plaintiff a letter asserting that Perfect Popcorn was a

22  derivative or copy of iMunchies and that it infringes iMunchies' trade dress. *Id.* ¶¶ 26-27, 29; *see*

23  *also id.* Exh. A. In the letter, Defendant bragged about its reputation for being litigious and

24  threatened to sue if Plaintiff did not pay more than $2 million and halt dissemination of Perfect

25  Popcorn or agree to a licensing fee of $40,000 per month plus $0.15 per download for a minimum

26  of two years. *Id.* ¶¶ 25, 33.

27

28      [1] For ease, the Court cites to the allegations of Plaintiff's Complaint. Defendant admits each
allegation in the corresponding paragraph(s) of its amended answer. *See* ECF 46.

Plaintiff then initiated this declaratory relief lawsuit on July 11, 2014, seeking declaratory judgments of (1) non-infringement of copyrights, (2) non-infringement of trademarks/trade dress, (3) no unfair business practices, and (4) no interference with contractual relations. *See* ECF 1.

On September 18, 2014, Defendant answered and asserted five counterclaims: (1) copyright infringement under 17 U.S.C. § 101, *et seq.*, (2) trade dress infringement under 25 U.S.C. § 1125(a)(1), (3) common law trade dress infringement, (4) intentional interference with prospective economic advantage, and (5) unfair competition under California Business & Professions Code § 17200. Answer and Counterclaims, ECF 14.

Plaintiff answered on November 13, 2014, ECF 18, and filed an amended answer on January 22, 2015, ECF 27. Plaintiff then moved for judgment on the pleadings, ECF 30, which the Court granted with leave to amend. ECF 41. Defendant filed its First Amended Answer and Counterclaims ("FACC") on September 16, 2015. ECF 46.

**B.  Defendant's Allegations in First Amended Counterclaims**

Defendant alleges the following in its FACC. Defendant published the iMunchies App on August 14, 2008. *Id.* ¶ 22. Plaintiff did not offer Perfect Popcorn until 2014. *Id.* ¶ 32. By September 8, 2014, when a user searched for "popcorn" in iTunes, Perfect Popcorn appeared first in the search results for iPhone Apps and iMunchies was visible only in the expanded search results. *Id.* ¶ 36.

Defendant describes iMunchies as follows: When a user chooses the popcorn option in the iMunchies App, it displays a moving image of "popcorn popping" and filling the screen as if the device were the container. *Id.* ¶ 22. Defendant alleges that the "depiction of popcorn popping" is more than a "realistic depiction." *Id.* ¶ 26. It is "stylized, idealized, and particular." *Id.* ¶ 26. Nine features distinguish this depiction from a "mere video recording of popcorn popping": (1) the popped kernels are all "approximately white" and fully popped; (2) the app appears to randomly repeat a limited repertoire of fully popped kernels; (3) the kernels pop sequentially; (4) every popped kernel is visible when it pops; (5) the virtual container is shallow; (6) the container is vertically-oriented; (7) all kernels are identical in size, regardless of how near or far they are in the container; (8) each popped kernel appears to be brightly illuminated from one direction and

United States District Court
Northern District of California

3

United States District Court
Northern District of California

1    continues to be illuminated from the same direction even when the kernel moves; and (9) the

2    viewer sees directly into the side of the virtual container. *Id.* ¶ 26. The overall visual impression

3    created by the combination and arrangement of these elements constitutes Defendant's trade dress.

4    *Id.* ¶ 27.

5        Defendant alleges that Perfect Popcorn includes each of these features and that Perfect

6    Popcorn's visual display is substantially similar to the iMunchies App's popcorn option. *Id.* ¶ 34.[2]

7    On this basis, Defendant asserts four counterclaims in the FACC: (1) copyright infringement

8    under 17 U.S.C. § 101, *et seq.*, (2) trade dress infringement under 25 U.S.C. § 1125(a)(1), (3)

9    common law trade dress infringement, and (4) unfair competition under California Business &

10   Professions Code § 17200. Defendant did not re-assert a claim of intentional interference with

11   prospective economic advantage.

12       Plaintiff now asks the Court to dismiss Defendant's counterclaims under Rule 12(b)(6) and

13   for judgment on the pleadings on its declaratory relief claims under Rule 12(c). Mot., ECF 47.

14   **II.    REQUEST FOR JUDICIAL NOTICE**

15       As a general rule, a district court may not consider any material beyond the pleadings when

16   ruling on a Rule 12(b)(6) motion. *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1016 n.9

17   (9th Cir. 2012). There are, however, two exceptions: documents incorporated by reference into the

18   complaint and matters which may be judicially noticed, both of which a court must consider. *See,*

19   *e.g., Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

20       Under the incorporation by reference doctrine, the Court may consider materials whose

21   contents are alleged in the complaint if the complaint "necessarily relies" on them and neither their

22   authenticity nor their relevance is contested. *Coto Settlement v. Eisenberg*, 593 F. 3d 1031, 1038

23   (9th Cir. 2010). The purpose of this rule is to "prevent plaintiffs from surviving a Rule 12(b)(6)

24   motion by deliberately omitting documents upon which their claims are based." *Swartz v. KPMG*

25

26   ---

     [2] Defendant's Amended Counterclaims allege that infringement of an iMunchies video is also at
27   issue. *See* AC ¶ 17. However, Defendant explained in its Opposition and confirmed at the hearing
     that the FACC "focus[es] the copyright and trade dress claims on the iMunchies App instead of
28   asserting them with respect to both the app and an earlier video." Opp. at 4. Accordingly,
     Defendant has waived any claim arising from the video.

4

1   *LLP*, 476 F. 3d 756, 763 (9th Cir. 2007) (internal quotation marks omitted).

2          Plaintiff asks the Court to take judicial notice of copies of Perfect Popcorn and iMunchies

3   that were downloaded to an iPhone and lodged with the Court. Mot. at 8. Defendant does not

4   object.[3] Because the apps are referenced in—and in fact form the basis of—the pleadings and

5   Defendant contests neither their authenticity nor their relevance, the Court GRANTS Plaintiff's

6   RJN of the two apps as downloaded to the iPhone lodged with the Court. *See Knievel v. ESPN*,

7   393 F.3d 1068, 1077 (9th Cir. 2005) (judicially noticing web pages that surrounded web pages

8   included in complaint); *see also City of Inglewood v. Teixeira*, No. CV1501815MWFMRWX,

9   2015 WL 5025839, at *2 (C.D. Cal. Aug. 20, 2015) (judicially noticing YouTube videos because a

10  defendant cannot "seek to delay potential resolution . . . by asserting that this Court may not

11  review the material it claims is infringing and has specifically identified in its Complaint.").

12  **III.    MOTION TO DISMISS**

13         The Court begins with Plaintiff's Motion to Dismiss, which seeks dismissal of Defendant's

14  amended counterclaims in their entirety. To survive a Rule 12(b)(6) motion to dismiss, "a

15  complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

16  plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v.*

17  *Twombly*, 550 U.S. 544, 570 (2007)). When considering a motion to dismiss, the Court "accept[s]

18  factual allegations in the complaint as true and construe[s] the pleadings in the light most

19  favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.,* 519 F.3d 1025,

20  1031 (9th Cir. 2008). The Court "need not, however, accept as true allegations that contradict

21  matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266

22  F.3d 979, 988 (9th Cir. 2001).

23      **A.  Copyright**

24         To state a copyright infringement claim, a plaintiff must allege "(1) ownership of a valid

25

26  _____

27  [3] Though Defendant objected in its Opposition to Plaintiff providing evidence at any point after
    filing its initial Motion, Plaintiff demonstrated the apps at the hearing and Defendant expressed

28  that it had no objection to the Court having seen the apps. In addition, the parties stated that they
    would confer regarding any objections before lodging the phone with the Court, and Defendant
    has filed no objection since that lodging.

copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tele. Serv. Co*., 499 U.S. 340, 361 (1991). Plaintiff does not challenge the sufficiency of the allegations regarding the first element. The second element requires allegations "that the works in question are substantially similar in their protected elements and that the infringing party had access to the copyrighted work." *Rice v. Fox Broad. Co*., 330 F.3d 1170, 1174 (9th Cir. 2003) (internal citation omitted). The parties' dispute centers on the sufficiency of Defendant's allegations of substantial similarity of protected elements.

To determine whether two works are substantially similar, the Ninth Circuit applies a two-part analysis: "an objective extrinsic test and a subjective intrinsic test." *Swirksy v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004); *see also Apple Computer, Inc. v. Microsoft Corp*., 35 F.3d 1435, 1442 (9th Cir. 1994). "The extrinsic test considers whether two works share a similarity of ideas and expression as measured by external, objective criteria." *Swirsky*, 376 F.3d at 845. The intrinsic test then considers whether "subjectively[,] the 'ordinary, reasonable person would find the total concept and feel of the [two works] to be substantially similar'" or virtually identical. *Swirsky*, 376 F.3d at 847 (quoting *Three Boys Music Corp. v. Bolton,* 212 F.3d 477, 485 (9th Cir. 2000)); *see also Mattel*, 616 F.3d at 914. The subjective inquiry "must be left to the jury," *Swirsky*, 376 F.3d at 845, or is "most often [asked] of juries," *Mattel, Inc. v. MGA Entm't, Inc*., 616 F.3d 904, 914 (9th Cir. 2010). The Court therefore applies the extrinsic test.

### 1.   Protectable Elements

The Court begins by considering which of Defendant's alleged expressive elements are protectable. "Because the requirement is one of substantial similarity to *protected* elements of the copyrighted work, it is essential to distinguish between the protected and unprotected material in a plaintiff's work." *Swirsky*, 376 F.3d at 845 (emphasis in original). "[A] court must filter out and disregard the non-protectible elements . . ." *Cavalier v. Random House, Inc.*, 297 F. 3d 815, 823 (9th Cir. 2002). The Court engages in this "dissection to determine the scope of copyright protection before . . . consider[ing the work] 'as a whole.'" *Apple*, 35 F.3d at 1443.

Plaintiff argues that Defendant seeks to protect an idea: realistically depicting popcorn popping on and filling the screen of a mobile device as if the device were a container. Mot. at 11

(citing FACC ¶ 22). Plaintiff contends that each of Defendant's allegedly expressive elements necessarily follows from that idea and therefore cannot be protected under the closely-related doctrines of merger and scènes à faire.

Under the merger doctrine, "courts will not protect a copyrighted work from infringement if the idea underlying the copyrighted work can be expressed in only one way, lest there be a monopoly on the underlying idea." *Satava v. Lowry*, 323 F.3d 805, 812 n.5 (9th Cir. 2003). Plaintiff relies on *Satava* to argue that the merger doctrine applies here. In *Satava*, the Ninth Circuit considered a glass-in-glass sculptor's claim for protection of a "vertically oriented, colorful, fanciful jellyfish with tendril-like tentacles . . . encased in . . . clear glass . . . [in] a bullet shape." *Satava*, 323 F.3d at 807. The Ninth Circuit held that "no copyright protection may be afforded to the idea of producing a glass-in-glass jellyfish sculpture or to elements of expression that naturally follow from the idea of such a sculpture." *Id.* at 809-10. In other words, the Ninth Circuit determined that the artist "may not prevent others from copying aspects of his sculptures resulting from either jellyfish physiology or from their depiction in the glass-in-glass medium." *Id.* at 810. This included "jellyfish with tendril-like tentacles or rounded bells, because many jellyfish possess those body parts," "jellyfish in bright colors, because many jellyfish are brightly colored," "jellyfish swimming vertically, because jellyfish swim vertically in nature and often are depicted swimming vertically," "jellyfish within a clear outer layer of glass, because clear glass is the most appropriate setting for an aquatic animal," "jellyfish 'almost filling the entire volume' of the outer glass shroud, because such proportion is standard in glass-in-glass sculpture," and "tapering the shape of their shrouds, because that shape is standard in glass-in-glass sculpture." *Id.* at 811.

Plaintiff also argues that Defendant's depiction is not protectable under the scènes à faire doctrine, which stands for the proposition that expressions that are "indispensable and naturally associated with the treatment of a given idea are treated like ideas and are therefore not protected by copyright." *Rice*, 330 F.3d at 1175 (internal quotation marks omitted). To argue that the scènes à faire doctrine applies here, Plaintiff offers *Kim Seng Co. v. J & A Importers, Inc.*, 810 F. Supp. 2d 1046 (C.D. Cal. 2011), which considered whether a photograph depicting a bowl filled with rice sticks, topped by egg rolls, grilled meat, and assorted garnishes on Chinese-Vietnamese food

7

United States District Court
Northern District of California

1  packaging was protectable. Relying in part on the scènes à faire doctrine, the court determined that

2  "[a]ny protectable elements . . . flow[ ] necessarily from the subject matter of the photograph,"

3  which provides a defense to infringement. *Id.* at 1057-58 (internal citations omitted).

4      Plaintiff contends that, as in *Satava* and *Kim Seng*, Defendant's alleged expression

5  naturally results from depicting the chosen subject (popcorn) on the chosen medium (mobile

6  device screen). Mot. at 12-13.

7      Defendant responds that, unlike the parties claiming infringement in *Satava* and *Kim Seng*,

8  Defendant specifically seeks to protect a depiction that is *not* realistic—including, for example, no

9  burnt, unpopped or half-popped kernels and depicting sequential rather than simultaneous

10  popping—and therefore neither the merger nor scènes à faire doctrine applies. Opp. at 10-12.

11  Defendant also points to *Satava*'s finding that, notwithstanding the unprotectablity of the sculpture

12  as a whole, specific expressive elements like "the distinctive curls of particular tendrils; the

13  arrangement of certain hues; [and] the unique shape of jellyfishes' bells" were protectable. 323

14  F.3d at 812. Therefore, Defendant argues that, even if the Court were to determine that not all nine

15  features are protectable, it should deny this motion because at least some elements are protectable.

16      The Court finds that, just as "no copyright protection may be afforded to the idea of

17  producing a glass-in-glass jellyfish sculpture or to elements of expression that naturally follow

18  from the idea of such a sculpture," *id.* at 809-810, no copyright protection may be afforded to the

19  idea of producing an app with popcorn popping on a mobile device screen or to elements of

20  expression that "naturally follow" from such an idea. Thus, Defendant's allegation that both apps

21  "display[ ] moving images of popcorn popping on the screen and filling the screen as if the device

22  were the container" does not suffice to state a copyright infringement claim.[4] On the other hand, as

23  _____

24  [4] Plaintiff also argues that, even if such a depiction were protectable, Defendant's allegation that
   iMunchies depicts "popcorn popping" is inconsistent with its allegation that iMunchies shows

25  only fully-popped kernels. *See* FACC ¶ 26 (using the word "popped" 10 times to describe the
   kernels in iMunchies). The Court agrees: Defendant's allegation that the app depicts popcorn

26  "popping" is contradicted by the allegation of fully-popped kernels and the judicially-noticeable
   app itself. Defendant's app portrays fully-popped popcorn moving, whereas Plaintiff's app shows

27  hard, yellow kernels transforming into puffs of popcorn. In other words, the apps show two
   distinct actions—moving by bouncing and twirling, and transformation from kernel to edible

28  popcorn. Nevertheless, reading the allegations in the light most favorable to Defendant, the Court
   construes the term "popping" to include all movement of popcorn for the purposes of this motion.

1    Defendant correctly notes, expressive elements that do not "naturally follow" from that idea are

2    protectable, and allegations of such elements would suffice to state a claim.

3         With that in mind, the Court considers the nine expressive elements that Defendant seeks

4    to protect: (1) the "approximately white" color and "fully popped" shape of the kernels; (2) the use

5    of only "a few identical images " to "depict popped kernels;" (3) the sequential popping of the

6    kernels; (4) showing each popped kernel as it pops; (5) the shallowness of the virtual container,

7    which is only two to three popped kernels deep; (6) the vertical orientation of the virtual container;

8    (7) displaying popped kernels as the same size, regardless of their distance from the viewer; (8)

9    bright lighting that appears to illuminate the popped kernels from the same direction regardless of

10   the kernel's movement; and (9) the perspective of looking straight into the side of the virtual

11   container. FACC ¶ 26.

12        **i.**     **"Approximately White" Color**

13        With regard to the first element, Plaintiff is correct that the asserted color and shape

14   "naturally follow" from the physical reality of popcorn. Far from attempting to protect, for

15   example, magenta popcorn with arms and legs, Defendant seeks to protect "approximately white,"

16   fully-popped kernels—the reality of popcorn. While Defendant argues that a real container of

17   popcorn is likely to include burnt and half-popped kernels, any commercial depiction will likely

18   exclude such attributes. In other words, protecting the asserted color and shape would grant

19   Defendant a monopoly over any appealing depiction of popcorn.[5]

20        Because popped popcorn is "approximately white" and takes the shape of fully-popped

21   kernels, this asserted element "naturally follows" from the idea of an app depicting popped

22   popcorn. *See Satava*, 323 F.3d at 810.  In other words, the element is "indispensable and naturally

23   associated with the treatment of a given idea and [is] therefore not protected by copyright." *Rice*,

24   330 F.3d at 1175.

25

26   _____

27   [5] Furthermore, "approximately white" is a troublingly broad description—or no description at all.
     For example, one popular paint store, Benjamin Moore, offers more than 177 shades of "white."

28   *See* benjaminmoore.com. As a result, it is not clear which color Defendant claims for itself, or that
     Plaintiff has used that exact color.

United States District Court
Northern District of California

1

**ii.     Use of Only a Few Identical Elements**

The second element—using a limited set of identical images to depict all popped kernels—is not protectable because it constitutes an idea or method. *See* 17 U.S.C. § 102(b) ("In no case does copyright protection for an original work of authorship extend to any idea, procedure, process . . . [or] method of operation . . ."). Defendant does not assert that iMunchies' precise kernel shapes are protectable or copied; instead, Defendant seeks to protect the idea or method of using a few identical images to depict a collection of objects.

Although the parties did not brief the issue in this manner, the Court finds *Baker v. Selden*, 101 U.S. 99 (1879) instructive on this point. In *Baker*, the Supreme Court considered a book that described a method of book-keeping and held that, while the author's explanation of the book-keeping method "in a particular way" was protectable, *id.* at 101, that protection did not extend to the book-keeping method itself. "[W]hilst no one has a right to print or publish his book, or any material part thereof . . . any person may practise and use the art itself . . ." *Id.* at 104. Applying that principle here, the Court finds that, while Defendant's precise kernel shape could be a protectable element, the alleged method of depiction is not.

**iii.    Sequential Popping**

As for the third element, the Court agrees with Defendant that sequential "popping" or movement is not barred by the merger or scènes à faire doctrines because an app could depict kernels popping or moving simultaneously, as real popcorn does.

Plaintiff does not argue otherwise. Instead, Plaintiff challenges Defendant's allegation of similarity by contending that Perfect Popcorn depicts kernels popping together. The Court addresses this argument below, and finds that the alleged sequential popping is a protectable element because it does not "naturally follow" from the idea of depicting popcorn popping on a mobile device screen, *see Satava*, 323 F.3d at 810, 812; *Kim Seng*, 810 F. Supp. 2d at 1057.

**iv.    Visibility of Popped Kernel as it Pops**

The fourth asserted element is that "[e]very popped kernel that pops is visible at the moment it pops." FACC ¶ 26. Defendant distinguishes this from a realistic depiction of popcorn in which "many kernels [would] pop while completely obscured from view by already-popped corn."

10

*Id.* Again, reading Defendant's use of the word "popping" in the light most favorable to Defendant—for example, to mean that the app first shows a kernel on screen at the precise moment that it "pops"—the Court agrees with Defendant that this element does not "naturally follow" from the idea of depicting popcorn popping on a mobile device screen. *See Satava*, 323 F.3d at 810, 812; *Kim Seng*, 810 F. Supp. 2d at 1057.

As with the third element, Plaintiff does not argue otherwise, instead asserting only that Perfect Popcorn does not copy this element, which the Court address below. Therefore, this element is protectable.

###### v.  Depth of Virtual Container

The fifth asserted element is the shallowness of the virtual container, which is only two to three popped-kernels deep. As Plaintiff correctly argues, only two or three layers of popcorn can be depicted on a two-dimensional screen before becoming completely obscured from view. As a result, this element "naturally follows" from the idea of an app depicting popcorn, *see Satava*, 323 F.3d at 810, and is "therefore not protected by copyright." *Rice*, 330 F.3d at 1175.

###### vi.  Vertical Orientation

The Court also agrees with Plaintiff with regard to the sixth element, vertical orientation of the virtual container. As Defendant itself alleges, "[t]his orientation is typical of many popcorn poppers" and, as Plaintiff argues, vertical is one of only two available orientations for a mobile device—and it is the default orientation. Because users naturally hold a phone vertically, this element "naturally follows" from the idea of an app depicting popcorn, *see Satava*, 323 F.3d at 810, and is "therefore not protected by copyright." *Rice*, 330 F.3d at 1175.

###### vii.  Size Independent of Distance

Defendant's seventh asserted element is depicting all popped kernels as the same size regardless of distance from the viewer. As with the sequential popping and visibility of popping elements, Plaintiff does not contest that this element is protectable, but rather argues that, unlike iMunchies, Perfect Popcorn depicts a range of sizes. Reply at 6. Therefore, this element does not "naturally follow" from the idea of depicting popcorn popping on a mobile device screen, *see Satava*, 323 F.3d at 810, 812, and is therefore protectable.

1

### viii.    Bright and Consistent Lighting

Turning to the eighth asserted element, the app's lighting, the Court agrees with Plaintiff that bright lighting is not protectable because it is nearly-ubiquitous in apps, which must be bright to be seen on a small phone screen.[6] As a result, that aspect of the lighting "naturally follows" from the idea of an app depicting popcorn, *see Satava*, 323 F.3d at 810, and is "therefore not protected by copyright." *Rice*, 330 F.3d at 1175.

However, the Court does not agree with Plaintiff that illuminating popcorn from only one direction regardless of movement necessarily follows from the idea of depicting popcorn on a mobile device screen. Instead, the light could shift as it does in reality. Therefore, the consistent lighting is a protectable "distinctive" element, *see Satava*, 323 F.3d at 812.

### ix.    Perspective

Finally, the app's alleged perspective—looking into the side of a container—is not protectable because, as Plaintiff argues, no other perspective would work. A depiction from above is, by definition, outside of the container, while a depiction from the bottom would be obscured. In addition, both alternatives would require the user to hold his/her device in an unnatural way. Thus, this element "naturally follows" from the idea of an app depicting popcorn, *see Satava*, 323 F.3d at 810, and is "therefore not protected by copyright." *Rice*, 330 F.3d at 1175.

### 2.  Combination of Elements

Having determined that Defendant has sufficiently alleged four protectable elements— sequential "popping," visibility of popped kernels when they "pop," size independent of distance, and consistent lighting—the Court now considers Defendant's argument that Defendant's selection, coordination, and arrangement of the protectable and unprotectable elements together warrants protection.

Defendant relies on *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841 (9th Cir. 2012), which considered a "repeating pattern of bouquets of flowers and three-leaf branches" and

---

[6] Furthermore, Defendant asserted at the hearing that a user can alter the brightness on both the phone and the app, thereby contradicting its allegations that color and brightness are constant, distinctive features of iMunchies.

United States District Court
Northern District of California

1   found that, though "[t]he idea of a floral pattern depicting bouquets and branches is not

2   protectible," the plaintiff's "original selection, coordination, and arrangement of such elements is

3   protectible." *Id*. at 850. This determination was motivated, in part, by the Court's determination

4   that "there is a 'wide range of expression' for selecting, coordinating, and arranging floral

5   elements in stylized fabric designs." *Id*. at 850 (citing Mattel, 616 F.3d at 913-14). *See also*

6   *Brighton Collectibles, Inc. v. RK Texas Leather Mfg.*, No. 10-CV-419-GPC WVG, 2012 WL

7   6553403, at *8 (S.D. Cal. Dec. 13, 2012) (notwithstanding the ubiquity of hearts, scrolls, roping,

8   and flowers in women's fashion accessories, they are entitled to broad copyright protection).

9           Defendant argues that its combination of the nine asserted elements similarly entitles it to

10  broad protection, as its expression constitutes only one of many ways to depict the idea of popcorn

11  popping on a mobile device. Opp. at 10-12. If an idea can be expressed in a wide range of ways,

12  the protection afforded to it is "'broad' and a work will infringe if it's 'substantially similar' to the

13  copyrighted work." *Mattel*, 616 F.3d at 914 (citing *Apple*, 35 F. 3d at 1439, 1446-47). If, on the

14  other hand, the range of possible expression is narrow, the protection is "'thin' and a work must be

15  'virtually identical' to infringe." *Id*. at 914 (citing *Satava v. Lowry*, 323 F.3d 805, 812 (9th Cir.

16  2003)).

17          Relying on *Satava*, Plaintiff responds that not "any combination of unprotectable elements

18  automatically qualifies for copyright protection." Reply at 7 (quoting *Satava*, 323 F.3d at 811).

19  Instead, "a combination of unprotectable elements is eligible for copyright protection only if those

20  elements are numerous enough and their selection and arrangement original enough that their

21  combination constitutes an original work of authorship." *Satava*, 323 F.3d at 811. In *Satava*, the

22  Ninth Circuit held that "selection of the clear glass, oblong shroud, bright colors, proportion,

23  vertical orientation, and stereotyped jellyfish form, considered together, lacks the quantum of

24  originality needed to merit copyright protection." *Satava*, 323 F. 3d at 811. Plaintiff argues that the

25  same is true here, as the asserted elements are so commonplace in real popcorn or in mobile device

26  image formats that even the combination lacks sufficient originality. Reply at 7.

27          Given the extremely low bar for the originality requirement, the Court disagrees with

28  Plaintiff. As the Supreme Court explained in *Feist*, "[o]riginal, as the term is used in copyright,

United States District Court
Northern District of California

1  means only that the work was independently created by the author . . . and that it possesses at least

2  some minimal degree of creativity." *Feist*, 499 U.S. at 345. The "requisite level of creativity is

3  extremely low." *Id.* As a result, "[t]he vast majority of works make the grade quite easily, as they

4  possess some creative spark, no matter how crude, humble or obvious it might be. " *Id.* (internal

5  citations omitted).

6        The Court agrees with Defendant that its combination of the nine asserted elements

7  satisfies this low bar, particularly given the Court's finding above that four of the elements are

8  protectable. If anything, combining elements that do not "naturally follow" from an idea increases

9  the level of creativity a work possesses. Thus, Defendant's combination of the nine asserted

10  elements qualifies for protection.[7]

11        Furthermore, as in *L.A. Printex*, the Court finds that there is a "wide range of expression"

12  for selecting, coordinating, and arranging design elements in an app depicting popcorn moving,

13  resulting in broad protection for the combination of elements. However, to the extent that

14  Defendant seeks to protect the individual protectable elements—the timing and visibility of

15  "popping," size independent of distance, and consistent lighting—the Court finds that the range of

16  expression for these elements is narrow and the protection is thin.

17     **3.  Similarity**

18        Having determined that Defendant has sufficiently alleged four protectable elements and a

19  protectable combination of both protectable and unprotectable elements, the Court now considers

20  whether Defendant has sufficiently alleged that the two apps "share a similarity of ideas and

21  expression as measured by external, objective criteria." *Swirsky*, 376 F.3d at 845.[8] The Court

22

23  [7] The question of originality is separate from the question of whether Defendant's alleged
    protectable elements and combination are *de minimis* such that any copying would be trivial and
24  could not be actionable as infringement. *See VMG Salsoul, LLC v. Ciccone*, No. 13-57104, 2016
    WL 3090780, at *3-4 (9th Cir. June 2, 2016); *see also Apple*, 35 F.3d at 1440, n.6, *See v. Durang*,
25  711 F. 2d 141, 143 (9th Cir. 1983). Because the parties did not brief this issue, the Court does not
    consider it on this motion, but invites such briefing at summary judgment.

26  [8] Plaintiff first argues that Defendant's allegation of similarity is conclusory. The Court agrees
    with Defendant that its allegation—that "[t]he Perfect Popcorn App includes every one of the
27  [nine] expressive features of popcorn option in the iMunchies App," *see* AC ¶ 34—is not
    conclusory. Therefore, the Court focuses its discussion on the bulk of the parties' disagreement:
28  whether or not the allegations of similarity are consistent with the rest of Defendant's pleadings.

United States District Court
Northern District of California

14

United States District Court
Northern District of California

1   considers "objective details in appearance, including, but not limited to, the subject matter, shapes,

2   colors, materials, and arrangement of the representations." *L.A. Printex*, 676 F.3d at 849; *see also*

3   *Cavalier*, 297 F.3d at 826. Where, as here, the combination of elements is protectable, the Court

4   need not "dissect them into their separate components, and compare only those elements which are

5   in themselves copyrightable." *L.A. Printex*, 676 F.3d at 849; *see also Swirsky*, 376 F.3d at 847

6   (finding that district court erred in conducting "a measure-by-measure comparison" of musical

7   compositions and disregarding their "combination with rhythm and pitch sequence").

8        Plaintiff argues that Defendant's allegation of similarity is contradicted by the screenshots

9   included in the pleadings as well as the apps themselves. Plaintiff contends that those materials

10   show a lack of any plausible similarity. Defendant responds that similarity is a question of fact not

11   appropriate at this stage. Opp. at 15.

12        Plaintiff is correct that the Ninth Circuit has noted that "[t]here is ample authority for

13   holding that when the copyrighted work and the alleged infringement are both before the court,

14   capable of examination and comparison, non-infringement can be determined on a motion to

15   dismiss." *Christianson v. West Pub. Co.*, 149 F. 2d 202, 203 (9th Cir. 1945)); *see also Zella v.*

16   *E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1139 (C.D. Cal. 2007). At the same time, the Ninth

17   Circuit has also explained that even "summary judgment is not highly favored on questions of

18   substantial similarity in copyright cases." *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th

19   Cir. 2002). Rather, summary judgment is appropriate only "if the court can conclude, after

20   viewing the evidence and drawing inferences in a manner most favorable to the non-moving party,

21   that no reasonable juror could find substantial similarity of ideas and expression." *Id.*

22        In *Christianson*, the Ninth Circuit affirmed a district court's finding that the maps at issue

23   shared only two attributes: both were "outline map[s] of the United States" and "grouped [the

24   states] according to the 'National Reporter System.'" 149 F.2d at 204. Because neither of those

25   elements "originated with appellant" and the maps used "an entirely different color scheme" and

26   exhibited "numerous other dissimilarities," the Ninth Circuit held that "[i]t is apparent that

27   appellee did not copy appellant's map."

28        The Court cannot reach the same conclusion on the basis of the materials currently before

it. Unlike the maps in *Christianson*, the apps exhibit moving images on a small screen, making differences in timing, lighting, and perspective impossible to determine on an objective basis at this stage. Though the Court has judicially noticed the apps, it cannot base any ruling on subjective determinations regarding its experience of the apps. While certain determinations about "subject matter, shapes, colors, materials, and arrangement" can be made objectively—for example, both apps show popcorn but exhibit different actions, as discussed above—the Court cannot determine whether the apps' timing of "popping," visibility of popped kernels when they "pop," size independent of distance, and lighting are objectively dissimilar. The movement occurs too quickly and the lighting is on too small of a scale to make any such determination objectively. This is true both for the combination of the elements, and for each protectable element separately.

As a result, the Court DENIES Plaintiff's motion to dismiss the copyright claim. However, the Court cautions that the Ninth Circuit has affirmed numerous determinations at summary judgment that a limited number of protectable elements—here, only one—does not "comprise a core of protectable and unlicensed similarities substantial enough to warrant a finding of illicit copying under a standard of substantial similarity." *Apple*, 35 F.3d at 1440, n.6; *see also See v. Durang*, 711 F. 2d 141, 143 (9th Cir. 1983).

**B. Trade Dress**

The Court now turns to the claim of trade dress infringement. Because the parties agree that Defendant seeks protection for trade dress that involves product design, *see* Mot. at 15-18, Opp. at 18-20, Defendant must plead that "(1) the trade dress is nonfunctional, (2) the trade dress has acquired secondary meaning, and (3) there is a substantial likelihood of confusion between the plaintiff's and defendant's products." *Art Attacks Ink, LLC v. MGA Entm't Inc*., 581 F.3d 1138, 1145 (9th Cir. 2009); *see also Wal-Mart Stores, Inc. v. Samara Bros*., 529 U.S. 205, 216 (2000).

In granting Plaintiff's previous motion for judgment on the pleadings, the Court found that Defendant had failed to sufficiently "plead the 'precise expression of the character and scope of the claimed trade dress,'" *see* Dismissal Order at 2 (citing *Sherwood 48 Assocs. v. Sony Corp. of Am.*, 76 Fed. Appx. 389, 392 (2d Cir. 2003)), and that its allegations of customer confusion were conclusory. Defendant has amended its allegations and the Court considers the sufficiency of the

1    amended allegations regarding each element of a trade dress claim below.

2        **1.   Secondary Meaning**

3        Plaintiff first challenges Defendant's allegations of secondary meaning by arguing that, to

4    the extent that Defendant claims "popcorn popping and being contained inside a mobile device's

5    full screen" as its trade dress, *see* FACC ¶ 57, the allegation is again too general. Plaintiff also

6    argues that this trade dress is too generic to be protected.

7        Defendant responds that its amended pleading defines its trade dress specifically as "the

8    overall visual impression that the combination and arrangement of [the nine expressive] elements

9    creates." *See* FACC ¶ 27. With regard to whether its claimed trade dress is generic, Defendant

10   relies on *Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc*., 419 F.3d 925 (9th Cir.

11   2005) to argue that this determination is not appropriate at the pleading stage.

12       In *Yellow Cab*, the Ninth Circuit reversed a district court's determination at summary

13   judgment that the term "yellow cab" is generic as a matter of law, explaining that "[w]hether a

14   mark is generic is a question of fact." *Id.* at 929 (internal citation omitted). *See also Pinterest Inc.

15   v. Pintrips Inc*., 15 F. Supp. 3d 992, 998 (N.D. Cal. 2014) (refusing to dismiss claim of trade dress

16   infringement based on use of the word "pin" because "[t]he fact-specific nature of this inquiry

17   normally precludes courts from determining at the pleading stage whether a mark is generic.").

18       Plaintiff argues that *Yellow Cab* and *Pinterest* consider verbal trademarks unlike the

19   "vague trade dress" alleged here and relies on cases from other jurisdictions to contend that the

20   Court can determine at the pleading stage whether the claimed trade dress is generic. *See, e.g.,

21   ID7D Co., Ltd. v. Sears Holding Corp*., No. 11-1054, 2012 WL 1247329, at *10 (D. Conn. Apr.

22   13, 2012); *Best of Everything of Sw. Florida, Inc. v. Simply the Best, LLC*, No. 8:11-CV-1090-T-

23   24, 2011 WL 4634147, at *2 (M.D. Fla. Oct. 6, 2011).

24       Both parties also rely on *Walker & Zanger*, 549 F. Supp. 2d 1168 (N.D. Cal. 2007), which

25   considered whether one set of decorative tiles infringed the trade dress of another. At summary

26   judgment, the *Walker* court recognized both the difficulty and the necessity of applying traditional

27   definitions of "genericness" to product design. *Id.* at 1174. The court explained,

28       'The traditional method of measuring a mark's strength with a yardstick that runs

United States District Court
Northern District of California

17

> from generic at one end to arbitrary and fanciful at the other is a clumsy method when measuring the strength of trade dress or product design.' But the rule against enforcing generic product features guards against the acquisition of broad trademark exclusivities that bear little relation to consumer confusion.

*Id.* at 1174 (quoting *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 828 (7th Cir. 2002)). As a result, the court concluded that a trade dress claim could be barred as generic if the asserted product design is (1) overbroad or too generalized; (2) the basic form of a type of product; or (3) so common that it cannot be said to identify a particular source. *Id.* at 1174.

Defendant argues that determining whether any of these situations is present would require a factual inquiry. Opp. at 19-20. Plaintiff, on the other hand, contends that *Walker* was able to find numerous trade dress elements generic on the basis of the pleadings alone. For example, the court determined that vague descriptions like "a palette of colors reminiscent of Provence," "rustic look," "weathered look," and "architectural character" were generic. *Walker,* 549 F. Supp. 2d at 1176. Plaintiff contends that the trade dress alleged here is similarly generic because it engulfs an entire category of food (popcorn) in an entire category of products (apps).

This argument is largely identical to Plaintiff's argument above about protectable elements and, as above, the Court finds it unpersuasive because it ignores Defendant's identification of a combination of specific design elements—like consistent lighting, sequential timing, and consistent sizing regardless of distance—as its trade dress. These elements are precise, unlike the vague "rustic" and "weathered" aesthetics asserted in *Walker*, and therefore suffice to allege secondary meaning. And, as Defendant correctly argues, whether or not Defendant will be able to "make the . . . difficult showing" that the "primary significance of [the trade dress] is to identify the source of the product" is a question for a later stage. *See Yurman*, 262 F.3d at 115.[9]

---

[9] The Court is not persuaded otherwise by Plaintiff's argument that Defendant needed to "allege facts relating to [its] advertising expenditures, consumer surveys, marketing coverage or prior attempts to plagiarize [its] trade dress." Mot. at 18-19 (quoting *Urban Grp. V. Dick's Sporting Goods*, No. 12-3599, 2012 WL 3240442, at *7 (S.D.N.Y. Aug. 7, 2012)). This argument ignores Defendant's allegations that "Hottrix has spent millions of dollar on advertising" and "has expended substantial resources in designing, promoting, manufacturing, and selling . . . the iMunchies App." FACC ¶¶ 3, 29. In addition, the Court does not reach Defendant's argument that popcorn is sufficiently central to iMunchies to give rise to secondary meaning, *see* Opp. at 23, because as Defendant correctly argues throughout its brief, this a question for a later stage.

1

### 2.  Non-Functionality

Defendant must also plead that its asserted trade dress is non-functional. A feature is functional if it "constitute[s] the actual benefit that the consumer wishes to purchase, as distinguished from an assurance that a particular entity made, sponsored, or endorsed a product." *Vuitton et Fils S.A. v. J. Young Enterprises, Inc*., 644 F.2d 769, 774 (9th Cir. 1981).

With regard to this element, Plaintiff argues that Defendant has offered only a conclusory allegation and has failed to prove that its unregistered trade dress is not functional. Defendant again responds that its allegation is sufficient and that Defendant need not *prove* non-functionality until a later stage. Opp. at 21.

The only case that Plaintiff offers dismissing a trade dress claim on the basis of a conclusory allegation of non-functionality is *Urban Group*, an unpublished decision from the Southern District of New York. In *Urban Group*, the plaintiff made a "trampoline-type device" and claimed trade dress over its red outline, black color, and protective fold skirt. *Urban Grp. V. Dick's Sporting Goods*, No. 12-3599, 2012 WL 3240442, at *1 (S.D.N.Y. Aug. 7, 2012). The plaintiff alleged that the "overall design and coloration" were "non-functioning," but the court dismissed the claim in part "[b]ecause the Amended Complaint fails to allege facts establishing Plaintiff's trade dress to be non-functional." *Id* at *6.

Plaintiff also offers Ninth Circuit and California district court decisions that determine non-functionality as a matter of law, but at more fact-intensive stages of a case. *See Rachel v. Banana Republic, Inc.,* 831 F.2d 1503, 1507 (9th Cir. 1987) (affirming directed verdict that eyes, ears, and noses are functional elements of "realistic reproductions of animals"); *Aurora World, Inc. v. Ty Inc.,* 719 F. Supp. 2d 1115, 1150 (C.D. Cal. 2009) (denying preliminary injunction where the plaintiff "merely listed attributes of its products that are common to many plush toys and asserted that they are not utilitarian.").

The Court agrees with Defendant that its allegation of non-functionality suffices. While Defendant's allegation that the total image and overall appearance is "not merely functional" may appear conclusory in isolation, it is based on allegations of specific expressive elements that Defendant asserts are unlike a realistic portrayal of popcorn and give rise to a secondary meaning.

United States District Court
Northern District of California

1         In addition, Plaintiff contends that the allegation of non-functionality is contradicted by the

2   alleged purpose of Defendant's app—to do "digital visual tricks" by "mak[ing] it appear as if the

3   device is a container that holds food or a beverage." FACC ¶ 1. Defendant responds that this

4   alleged purpose does not contradict the allegation of non-functionality because none of the

5   identified elements is necessary to create iMunchies' "visual trick." *Id.* The Court agrees that the

6   two allegations are not necessarily contradictory, as Defendant could use a different display of a

7   food, or even popcorn, container to achieve the same "visual tricks" purpose.

8       **3.  Likelihood of Consumer Confusion**

9         Plaintiff also argues that Defendant's allegations of confusion are not plausible. Mot. at 15.

10  Instead, Plaintiff contends that they are contradicted by Defendant's allegation that "when a user

11  searches for [the word] 'popcorn,' both apps appear in the search results." The Court disagrees—

12  alleged iTunes' search results do not contradict an allegation of customer confusion.

13        The Court is similarly unpersuaded by Plaintiff's contention that the apps themselves are

14  so dissimilar as to contradict any allegation of confusion because Plaintiff again asks the Court to

15  make factual determinations that are not appropriate at this stage. Furthermore, Plaintiff bases this

16  argument on asserted differences in how the apps are marketed and how users interact with the

17  apps, but these differences are not alleged, nor does Plaintiff engage with the visual elements that

18  Defendant asserts comprise its trade dress. Therefore, Plaintiff's arguments cannot defeat

19  Defendant's allegations.

20        Finally, Plaintiff argues that Defendant cannot compare Perfect Popcorn to a subpart of

21  iMunchies but must instead look at the app as a whole, including non-popcorn options and

22  elements that are consistent across options. Plaintiff bases this argument on *Walt Disney Co. v.*

23  *Goodtimes Home Video Corp.*, 830 F. Supp. 762, 766 (S.D.N.Y. 1993), which considered

24  Disney's attempt to protect the packaging it used for 17 videocassettes that comprised "its family

25  of Classic Animated Features." *Id.* at 766. The court explained that extending trade dress

26  protection across multiple products was unusual and therefore Disney bore "a burden which most

27  plaintiffs alleging trade dress infringement do not need to carry . . . Disney must establish that its

28  videocassette packages have a consistent overall look." *Id.* at 766.

United States District Court
Northern District of California

1    Plaintiff also points to the Second Circuit's statement in *Bristol-Myers Squibb Co. v.*

2   *McNeil-P.P.C., Inc.*, 973 F.2d 1033, 1042 (2d Cir. 1992) that "[i]n examining trade dress the focus

3   is on the *entire* look of the product or packaging." *Id.* at 1042 (emphasis in original). However, as

4   Defendant points out, Plaintiff ignores the next line, which states that "[i]ndividual aspects of a

5   trade dress may be eligible for trademark protection in their own right, but in an action for trade

6   dress infringement each aspect should be viewed in relation to the entire trade dress." *Id*. at 1042.

7    The Court does not agree that these cases, which it notes are not binding on the Court,

8   require the Court to consider all aspects of iMunchies. Instead, the Court need only consider the

9   *alleged* elements in combination because, in contrast to *Disney*, which imposed a "consistent

10   overall look" requirement because the trade dress was asserted over multiple products, here

11   Defendant claims only a portion of one product as its trade dress. Similarly, because Defendant

12   has defined its trade dress as the combination of the nine alleged elements, *Bristol* suggests that

13   the Court must consider the elements in combination but it does not require the Court to look

14   beyond the asserted trade dress. While Defendant's focus may make secondary meaning more

15   difficult to prove, it is neither Plaintiff's nor the Court's place to redefine the alleged trade dress.

16   Therefore, the Court finds that Defendant's allegations of likelihood of consumer confusion are

17   sufficient.

18    Accordingly, the Court DENIES Plaintiff's motion to dismiss the trade dress infringement

19   claim and the UCL claim, which the parties agree rises or falls with the trade dress claim.

20   **IV.    MOTION FOR JUDGMENT ON THE PLEADINGS**

21    Finally, the Court considers Plaintiff's Motion for Judgment on the Pleadings. Under

22   Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed . . . a party may move for

23   judgment on the pleadings." In considering such a motion, a court must accept any allegations by

24   the non-moving party as true and must consider any allegations of the moving party which have

25   been denied as false. *Torbey v. United Airlines, Inc*., 298 F.3d 1087, 1089 (9th Cir. 2002).

26   "Judgment on the pleadings is proper when there are no issues of material fact, and the moving

27   party is entitled to judgment as a matter of law." *Gen. Conference Corp. of Seventh-Day*

28   *Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989).

21

The moving party bears the burden of demonstrating that no material issue of fact remains and that it is entitled to judgment as a matter of law. *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989).

Plaintiff has failed to meet its burden here. Rather, Plaintiff briefed this motion as through it were exclusively a motion to dismiss. Instead of addressing the admitted and denied allegations in Plaintiff's complaint as required by Rule 12(c), Plaintiff focused on the sufficiency of Defendant's allegations in the FACC. Furthermore, as discussed at length above, Plaintiff has failed to demonstrate that no material issue of fact remains on its declaratory relief claims. Instead, material issues of fact regarding substantial similarity, secondary meaning, non-functionality, and customer confusion preclude Plaintiff from being entitled to judgment as a matter of law at this stage. Accordingly, the Court DENIES Plaintiff's Motion for Judgment on the Pleadings.

**IT IS SO ORDERED.**

Dated: July 18, 2016

BETH LABSON FREEMAN
United States District Judge