**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| DIAMOND FOODS, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>HOTTRIX, LLC,<br><br>    Defendant.<br><hr>HOTTRIX, LLC,<br><br>    Counterclaimant,<br><br>v.<br><br>DIAMOND FOODS, INC.,<br><br>    Counterclaim-defendant.<br><hr>DIAMOND FOODS, INC.,<br><br>    Third party plaintiff,<br><br>v.<br><br>DEUTSCH LA, INC.,<br><br>    Third party defendant. | Case No. 14-cv-03162-BLF<br><br>**ORDER GRANTING THIRD PARTY DEFENDANT DEUTSCH LA, INC.'S MOTION TO COMPEL ARBITRATION OF DIAMOND FOODS, INC.'S THIRD PARTY COMPLAINT AND STAY LITIGATION OF DIAMOND FOODS' CLAIMS AGAINST DEUTSCH**<br><br>[Re: ECF 89] |

Since July 2014, this lawsuit has centered on a dispute between Plaintiff and Counterclaim-defendant Diamond Foods, Inc. ("Diamond Foods") and Defendant and Counterclaimant Hottrix, LLC ("Hottrix") over alleged copyright and trade dress infringement of a mobile software application that depicts popcorn. On January 22, 2018, this Court granted Diamond Foods' unopposed motion to file a third party complaint for indemnity against Deutsch

LA, Inc. ("Deutsch"), the company hired by Diamond Foods to develop the "Perfect Popcorn" mobile application to promote Diamond Foods' Pop Secret Popcorn Brand. *See* ECF 84.

Deutsch now moves to compel arbitration of Diamond Foods' third party complaint pursuant to the Federal Arbitration Act based on the arbitration clause in the agreement between Deutsch and Diamond. *See generally* Motion to Compel Arbitration ("Mot."), ECF 89. The Court deemed this matter suitable for submission without oral argument. ECF 108. For the reasons that follow, Deutsch's motion to compel arbitration is GRANTED.

**I.     BACKGROUND**

Diamond Foods originally filed this case against Hottrix on July 11, 2014, seeking a declaratory judgment that Diamond Foods' Perfect Popcorn mobile application does not infringe upon any copyright or trade dress rights in Hottrix's "iMunchies" app. *See* ECF 1 ("Compl."). Hottrix asserts counterclaims against Diamond Foods for copyright infringement, statutory and common law trade dress infringement, and unfair competition. *See* ECF 46 ("Amend. Counterclaims"). Following establishment of the pleadings between Diamond Foods and Hottrix, the parties proceeded with discovery. On January 3, 2018, Diamond Foods moved pursuant to Federal Rule of Civil Procedure 14 for leave to file a third party complaint for express contractual indemnity against Deutsch. *See* ECF 82. Hottrix did not oppose, and the Court granted Diamond Foods leave to file and serve its third party complaint against Deutsch. *See* ECF 84.

Deutsch now moves to stay the third party action and compel arbitration under Sections 3 and 4 of the Federal Arbitration Act ("FAA"). *See* Mot. at 7 (citing 9 U.S.C. §§ 3, 4). The following facts are relevant to the instant motion: Effective January 1, 2011, Diamond Foods entered into a Master Service Agreement ("MSA") with Deutsch to develop a marketing plan and related software for Diamond Foods' brands, including Pop Secret popcorn. *See* Third Party Compl. ¶ 7, ECF 85; Exh. A to Third Party Complaint, ECF 85-1 ("MSA"). On or about March 22, 2013, Diamond Foods and Deutsch executed a Statement of Work ("2013 SOW") governed by the MSA, pursuant to which Deutsch agreed to create and build the Perfect Popcorn mobile phone application for Diamond Foods as part of the advertising campaign for Pop Secret. *See* Third Party Compl. ¶ 9. On or about January 21, 2014, Diamond Foods and Deutsch executed a

2

Statement of Work ("2014 SOW") governed by the MSA, pursuant to which Deutsch created and built a subsequent iteration of the Perfect Pop app. *Id.* ¶ 11.

The MSA contains two relevant indemnification provisions, whereby Diamond Foods agreed to indemnify Deutsch for any expenses arising from "any subpoena received by Deutsch…in connection with a litigation, arbitration or other dispute involving [Diamond Foods] where Deutsch is not a party." MSA ¶ 9. The MSA also provides that Deutsch would indemnify Diamond Foods for any copyright infringement claims arising from any advertising prepared by Deutsch and used by Diamond Foods "other than Claims (a) based upon materials furnished or approved by [Diamond Foods]." *Id.* ¶ 10.

The MSA includes an arbitration clause that provides:

> Any dispute arising under this Agreement or the termination of this Agreement may be submitted by either party to arbitration in Los Angeles, CA, under the commercial rules of the American Arbitration Association before a single arbitrator. Any award will be enforceable in any court of competent jurisdiction and will not be inconsistent with the terms of this Agreement. The non-prevailing party in any arbitration will be assessed the cost of the prevailing party's reasonable attorneys' fees and expenses.

*See* MSA ¶ 22.[1] In addition, the MSA contains a general choice-of-law provision that states "[t]his Agreement will be interpreted under, construed in accordance with and governed by the laws of the State of California without regard to its conflict of laws principles." MSA ¶ 30.

In October 2017, during the course of Diamond Foods' litigation with Hottrix, Diamond Foods issued a subpoena *duces tecum* to Deutsch. *See* Declaration of Hazel Mae B. Pangan ("Pangan Decl.") ¶ 2, ECF 93-1. Deutsch produced documents in response to the subpoena, and also notified counsel for Diamond Foods of its position that Deutsch was entitled to indemnification for all costs arising from the subpoena consistent with Section 9 of the MSA. *See* Mot. at 4. On December 12, 2017, Diamond Foods issued an indemnity demand to Deutsch pursuant to Section 10 of the MSA, demanding that Deutsch indemnify and defend Diamond

---

[1] The Court acknowledges that it reviewed the MSA containing the arbitration clause at issue before Deutsch was impleaded in the context of Diamond Foods' unopposed motion for leave to file a third party complaint. *See* ECF 82-2. The enforceability of the arbitration provision was not before the Court in its analysis of the factors under Federal Rule of Civil Procedure 14. Thus, Deutsch's motion to compel arbitration is this Court's first opportunity to consider whether Diamond Foods' claims against Deutsch must be arbitrated pursuant to the FAA.

3

1 Foods from and against all claims asserted by Hottrix in the instant action. *See* Exh. D to Pangan Decl., ECF 93-5. Diamond Foods also notified Deutsch of its intention to seek leave of court in the Hottrix litigation to file a third party complaint in impleader against Deutsch for express contractual indemnity in the event that Deutsch refused Diamond Foods' demand for indemnity and defense. *Id.* at 3.

In response, Deutsch invoked the MSA's arbitration clause and sent an arbitration demand to Diamond Foods through the American Arbitration Association ("AAA") on January 9, 2018. *See* Pangan Decl. ¶ 6; *see also* Exh. A to Declaration of David B. Berman ("Berman Decl."), ECF 90. In arbitration, Deutsch sought (1) indemnification from Diamond Foods under Section 9 of the MSA for all costs incurred as a result of Diamond Foods' subpoena in the Hottrix litigation; and (2) a declaration that Deutsch is not liable to indemnify Diamond Foods under Section 10 of the MSA for defending Hottrix's counterclaims. *See* Exh. A to Berman Decl.

On January 24, 2018, Diamond Foods served Deutsch with the third party complaint in this action, which includes claims for indemnity as well as a declaratory judgment setting forth "the respective rights and duties of Deutsch and Diamond Foods with respect to the damages claimed in the complaint." Third Party Compl. ¶ 41. Two days later, on January 26, 2018, Diamond Foods objected to arbitral jurisdiction before the arbitrator in Los Angeles. *See* Exh. E to Pangan Decl. Deutsch's instant motion to compel arbitration of the third party complaint followed.

On May 24, 2018, while Deutsch's motion was pending before this Court, Deutsch filed a supplemental letter brief informing the Court that the arbitration was moving forward and the arbitrator recently ruled in favor of arbitral jurisdiction and denied Diamond Foods' request for a stay of arbitration. *See* ECF 105; ECF 105-1 ("Arbitration Order"). Diamond Foods filed a supplemental letter brief on May 30, 2018, arguing that this Court is not bound by the Arbitration Order and has the power to stay arbitration. *See* ECF 107. The Court has reviewed and considered these supplemental materials in reaching the conclusion below.

## II. LEGAL STANDARD

Enforceability of an arbitration clause, and the determination of the scope of that clause, is governed by the Federal Arbitration Act ("FAA"). 9 U.S.C. §§ 1 *et seq.* Under the FAA,

arbitration agreements are a matter of contract, and "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Such generally applicable contract defenses include "fraud, duress, or unconscionability," but not "defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT & T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citation omitted). A party seeking to invoke an arbitration agreement may petition the district court "for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4; *see also Trompeter v. Ally Fin., Inc.*, 914 F.Supp.2d 1067, 1071 (N.D. Cal. 2012).

A district court faced with a petition to enforce an arbitration clause engages in a limited two-part inquiry: first, it determines whether the arbitration agreement is valid, and second, it determines whether the agreement encompasses the claims at issue. *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015). A district court does not consider challenges to the contract as a whole, but rather only specific challenges to the validity of the arbitration clause itself. *See Rent–A–Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010) (noting the "two types of validity challenges" but holding that only challenges to the validity of the agreement to arbitrate are "relevant to a court's determination whether the arbitration agreement at issue is enforceable").

### III. DISCUSSION

Diamond Foods does not dispute the validity or mandatory nature of the arbitration clause in its opposition to Deutsch's motion. The Court therefore finds that the arbitration agreement between Diamond Foods and Deutsch is valid and encompasses the claims raised in Diamond Foods' third party complaint. However, Diamond Foods argues that (1) arbitration with Deutsch is premature given the instant litigation involving Hottrix; and (2) the Court has discretion pursuant to California Code of Civil Procedure Section 1281.2(c) to decide not to enforce arbitration agreements where pending litigation leads to conflicting rulings. *See* Opp'n at 5-14, ECF 93. For the reasons discussed below, neither of these arguments persuades the Court to relieve Diamond Foods of its agreement to arbitrate its indemnity claims against Deutsch.

**A. Ripeness**

Diamond Foods argues that compelling arbitration is premature because the Court must first resolve threshold issues regarding liability for Hottrix's claims before deciding indemnity obligations between Diamond Foods and Deutsch. *See* Opp'n at 6. This is not so.

The Court agrees with Deutsch that Diamond Foods has conflated the two different indemnity provisions at issue in the arbitration: one of which is Deutsch's demand pursuant to Section 9 of the MSA that Diamond Foods indemnify it in connection with the October 2017 subpoena *duces tecum.* Reply at 7, ECF 94. This contractual obligation that Deutsch seeks to enforce is entirely independent of the resolution of the intellectual property claims involved in this litigation. In other words, the outcome of the dispute between Diamond Foods and Hottrix has no consequence whatsoever with respect to whether Diamond Foods must indemnify Deutsch for costs associated with the subpoena. Diamond Foods' argument impermissibly requests this Court to resolve the underlying dispute in its favor by finding that Section 9(g) of the MSA no longer applies because Deutsch is now a party to this litigation. *See* Opp'n at 9. That is precisely the type of dispute that Diamond Foods and Deutsch agreed to arbitrate. *See* MSA ¶ 22 (providing for arbitration of "[a]ny dispute arising under this Agreement or the termination of this Agreement").

Regarding the parties' respective liability pursuant to Section 10 of the MSA, Diamond Foods vastly overstates the "inextricably intertwined" nature of Hottrix's infringement claims with Deutsch's involvement in the creation of the Perfect Popcorn app. The indemnity dispute proceeding before the arbitrator is limited to whether Diamond Foods owes Deutsch for the costs associated with the October 2017 subpoena, and whether Deutsch owes Diamond Foods for the cost of the Hottrix litigation and any potential judgment entered against Diamond Foods. Liability on Hottrix's counterclaims against Diamond Foods does not need to be determined first.

Diamond Foods has already issued a demand that Deutsch "indemnify and defend" Diamond Foods in the Hottrix litigation pursuant to Section 10 of the MSA, which presumably includes paying for litigation expenses in the event Diamond Foods is unable to recover such costs from Hottrix. *See* Exh. D to Pangan Decl. Thus, Diamond Foods' argument that determination of the indemnity claims at this juncture would amount to an advisory opinion based on "an uncertain

6

future event" is unpersuasive and legally unsupported. *See Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 144 (9th Cir. 1994) (holding that declaratory judgment action regarding duty to "defend and indemnify" was sufficiently ripe "even when the underlying liability action in state court had not yet proceeded to judgment") (citing *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270 (1941).

Diamond Foods points to no authority for its proposition that a party can avoid enforcement of a binding arbitration clause because certain amounts owed under the agreement may be offset depending on the outcome of litigation with a non-party to the arbitration clause. Although the ultimate dollar amount at issue may be undetermined and depend in part on whether Hottrix obtains a judgment against Diamond Foods on its infringement claims, Diamond Foods' and Deutsch's respective indemnity obligations can be resolved independently. Even if Perfect Popcorn ultimately is found to infringe on Hottrix's iMunchies app, that outcome does not depend on whether Diamond Foods or Deutsch is responsible for those infringement claims under the MSA.

In any event, unless Diamond Foods provides a basis for the Court not to enforce the mandatory arbitration clause in the MSA, ripeness is arguably a question to be decided by the arbitrator. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 85 (2002); *Chicago Typographical Union No. 16 v. Chicago Sun-Times, Inc.*, 860 F.2d 1420, 1425 (7th Cir. 1988) ("[T]here is authority that the court should inquire only whether the subject matter of a dispute is within the arbitration clause, leaving the arguably procedural issue of 'ripeness' to the arbitrator.")

Indeed, the arbitrator in this matter has already determined that the issues are ripe, explaining in the denial of Diamond Foods' request for a stay that "the indemnity issues appear to be contractual in nature relating to the indemnity obligations of Deutsch and Diamond Foods, arising from the work performed pursuant to the MSA. It does not appear necessary, as Diamond Foods argues, to resolve the issue of its potential liability in the Perfect Pop Litigation before the indemnity issues become 'ripe.'" Arbitration Order at 4. As explained above, this Court is in complete agreement with the arbitrator's determination that "[t]he indemnity issues appear capable of declaration before the expenses of the Perfect Pop Litigation further accumulate and the parties'

7

claims for indemnity potentially multiply." *Id.*

Just as this case has advanced toward trial on the intellectual property claims for the past four years without Deutsch's involvement, this Court can continue to adjudicate this dispute between Diamond Foods and Hottrix while arbitration on the indemnity claims proceeds as mandated by the MSA. For these reasons, Diamond Foods' ripeness argument fails.

### B. CCP § 1281.2(c)

Diamond Foods' only other argument in opposition to Deutsch's motion to compel arbitration is that under California law, this Court has the discretion not to enforce arbitration agreements where pending litigation leads to conflicting rulings. *See* Opp'n at 10-14 (citing Cal. Code Civ. P. § 1281.2(c)). For the same reasons discussed above, there is virtually no possibility of conflicting rulings given the separateness of the indemnity issues and intellectual property issues. More importantly, Diamond Foods' argument fails because the FAA governs the parties' dispute, and the California procedural rule on which Diamond Foods relies does not.

California Code of Civil Procedure Section 1281.2(c) permits nonenforcement of an otherwise mandatory arbitration agreement where "[a] party to the arbitration agreement is also a party to a pending court action or special proceeding with a third party, arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact." Cal. Code Civ. P. § 1281.2(c). Accordingly, "[i]f the court determines that a party to the arbitration is also a party to litigation in a pending court action or special proceeding with a third party as set forth under subdivision (c) herein, the court (1) may refuse to enforce the arbitration agreement and may order intervention or joinder of all parties in a single action or special proceeding; (2) may order intervention or joinder as to all or only certain issues; (3) may order arbitration among the parties who have agreed to arbitration and stay the pending court action or special proceeding pending the outcome of the arbitration proceeding; or (4) may stay arbitration pending the outcome of the court action or special proceeding." Cal. Code Civ. Proc. § 1281.2.

Diamond Foods argues that even though the MSA includes an agreement to arbitrate "under the commercial rules of the American Arbitration Association," this Court can and should

8

1 apply CCP § 1281.2 and refuse to enforce the arbitration agreement or stay arbitration pending the

2 outcome of litigation. *See* Opp'n at 10. Because the MSA and two SOWs between Diamond

3 Foods and Deutsch concern the development of the Perfect Popcorn application at issue in

4 Diamond Foods' litigation with Hottrix, Diamond Foods argues that the MSA arises "out of the

5 same transaction or series of related transactions" as the allegations of infringement in the instant

6 litigation. *Id.* Moreover, Diamond Foods argues that California procedural law rather than the

7 FAA governs the contract because the MSA expressly states in its choice-of-law provision that the

8 "Agreement will be…governed by the laws of the State of California." *Id.* (citing MSA § 30).

9 Deutsch responds that CCP § 1281.2 is inapplicable because the parties could not intend

10 both AAA and California procedural rules to apply to arbitration. *See* Reply at 1-4. Accordingly,

11 Deutsch argues that the MSA's choice-of-law clause does not incorporate California procedural

12 rules such as CCP § 1281.2. *Id.* The Court agrees with Deutsch that applying CCP § 1281.2 in

13 this case would run counter to clear authority from the Supreme Court and Ninth Circuit holding

14 that a contract's general choice-of-law clause does not incorporate state rules addressing the

15 allocation of authority between courts and arbitrators.

16 In *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52 (1995), the Supreme Court

17 interpreted a contract that contained an arbitration provision and a choice-of-law provision in the

18 same paragraph. *See id.* at 58. The choice of law sentence provided that the entire agreement

19 "shall be governed by the laws of the State of New York." *Id.* at 58-59. The second sentence

20 provided that "any controversy" arising out of the transaction between the parties "shall be settled

21 by arbitration" in accordance with the rules of the National Association of Securities Dealers. *Id.*

22 at 59. The respondent argued that the sentence "shall be governed by the laws of the State of New

23 York" incorporated a New York rule prohibiting arbitrators from awarding punitive damages. *Id.*

24 at 53. The Supreme Court rejected this broad interpretation and held that "the best way to

25 harmonize the choice-of-law provision with the arbitration provision is to read 'the laws of the

26 State of New York' to encompass substantive principles that New York courts would apply, but

27 not to include special rules limiting the authority of arbitrators. Thus, the choice-of-law provision

28 covers the rights and duties of the parties, while the arbitration clause covers arbitration; neither

9

sentence intrudes upon the other." *Id.* at 63-64.

The Ninth Circuit then relied on *Mastrobuono* in reaching its holding in *Wolsey, Ltd. v. Foodmaker, Inc.*, a case that is binding and directly on point with respect to the applicability of CCP § 1281.2(c). 144 F.3d 1205, 1211 (9th Cir. 1998). Like the MSA and the contract in *Mastrobuono*, the agreement in *Wolsey* contained an arbitration clause and a general choice-of-law clause but did not refer to § 1281.2(c). 144 F.3d at 1212. The Ninth Circuit explained that the relevant question is whether § 1281.2(c) is a "substantive principle that [California] courts would apply" or is instead "a special rule[ ] limiting the authority of arbitrators." *Id.* (citing *Mastrobuono*, 514 U.S. at 64). As explained above, § 1281.2(c) allows courts to stay arbitration proceedings where a party to the arbitration agreement is also a party to a pending court action with a third party arising out of the same transaction. The Ninth Circuit was unequivocal: "Such a rule assuredly does affect California's allocation of power between alternative tribunals." *Wolsey*, 144 F.3d at 1212 (citing *Mastrobuono,* 514 U.S. at 64). Accordingly, § 1281.2(c) was not deemed to be incorporated into the contract's general choice of law provision.

Diamond Foods tries in vain to distinguish *Wolsey* from the MSA in this case, arguing that the *Wolsey* agreement's choice-of-law clause stated that it "shall be interpreted and construed under the laws of the State of California, U.S.A." without reference to what law "governed." Opp'n at 13. This is a distinction without a difference, and Diamond Foods provides no authority for its argument that the mere addition of the "governed by" language in the MSA manifests a specific intent by the parties to incorporate state law arbitration rules. Diamond Foods' argument is further undermined by the language of the choice-of-law provision in *Mastrobuono* providing that the agreement would be "governed by the laws of the state of New York." 514 U.S. at 64. Even in the presence of this nearly identical language to that in the MSA, the Supreme Court held that an agreement's general choice-of-law provision did not incorporate state rules allocating authority between courts and arbitrators. *Id.* Diamond Foods' attempt to narrow the holding of *Mastrobuono* and downplay its relevance to the issue at hand is not persuasive.

*Mastrobuono* and *Wolsey* squarely settle the legal question in this case. The MSA expressly incorporates California substantive law in Section 30 and incorporates the AAA rules in

10

Section 22 to resolve the parties' disputes. Diamond Foods' reliance on the general choice-of-law clause does not show that the parties intended to incorporate state procedural rules on arbitration such as CCP § 1281.2(c). The Supreme Court has further clarified that the "best way to harmonize the parties' adoption of the AAA rules and their selection of California law is to read the latter to encompass prescriptions governing the substantive rights and obligations of the parties, but not the State's 'special rules limiting the authority of arbitrators.'" *Preston v. Ferrer*, 552 U.S. 346, 363 (2008) (citing *Mastrobuono*, 514 U.S. at 63-64); *see also BioMagic, Inc. v. Dutch Bros. Enters., LLC*, 729 F. Supp. 2d 1140, 1146 (C.D. Cal. 2010) (interpreting nearly identical California choice-of-law clause and holding that Section 1281.2(c) cannot be reconciled with the parties' agreement to arbitrate under the AAA rules, which have procedural rules that differ from California's). Thus, Section 1281.2(c) is inapplicable and does not preclude Deutsch from invoking its right to arbitrate the indemnity claims, even as parallel litigation between Diamond Foods and Hottrix pends before this Court. *See* Arbitration Order at 3.

Diamond Foods relies heavily on *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 477 (1989), to argue that the FAA does not preempt CCP § 1281(c) because the two laws do not conflict. *See* Opp'n at 11. *Volt* involved the applicability of CCP § 1281.2(c) to a dispute over contract that included both an arbitration provision and a general choice-of-law clause. 489 U.S. at 470. The California Court of Appeal held that by agreeing to a California choice-of-law provision, the parties had agreed to incorporate CCP § 1281.2(c) and invoked its discretion to deny the defendant's motion to compel arbitration. *Id.* at 471. Although seemingly relevant to the question presented here, the Supreme Court in *Volt* expressly declined to review the California Court of Appeal's interpretation of the contract. *Id.* at 474 (reasoning that "the interpretation of private contracts is ordinarily a question of state law, which this Court does not sit to review.")

Thus, *Volt* only addressed the limited question of "whether, assuming the choice-of-law clause meant what the Court of Appeal found it to mean, application of [CCP] § 1281.2(c) is nonetheless pre-empted by the FAA to the extent it is used to stay arbitration under this contract involving interstate commerce." *Id.* at 476. The Supreme Court did not consider the argument

11

1 raised by Deutsch here: that incorporation of the AAA rules in the arbitration agreement

2 overcomes the contract's general choice of law clause.

3 The Supreme Court's majority opinion in *Mastrobuono* emphasized this limitation of

4 *Volt*'s holding, explaining that "[t]he dissent makes much of the similarity between this choice-of-

5 law clause and the one in *Volt,* which we took to incorporate a California statute allowing a court

6 to stay arbitration pending resolution of related litigation." 514 U.S. at 60 n.4. However, the

7 Supreme Court distinguished *Volt* on the grounds that "we did not interpret the contract *de*

8 *novo.* Instead, we deferred to the California court's construction of its own State's law." *Id.* The

9 Supreme Court explained again in *Preston* that although the *Volt* contract provided for arbitration

10 in accordance with AAA rules, "Volt never argued that incorporation of those rules trumped the

11 choice-of-law clause contained in the contract" and thus the Supreme Court in *Volt* did not address

12 "the import of the contract's incorporation by reference of privately promulgated arbitration

13 rules." 552 U.S. at 361-362.

14 The Ninth Circuit in *Wolsey* also distinguished *Volt*, explaining that although *Volt* involved

15 the applicability of CCP § 1281.2(c) to a dispute over a contract that included both an arbitration

16 provision and a general choice-of-law clause, the *Volt* court "*declined to review* the California

17 Court of Appeal's interpretation of the contract." *Wolsey,* 144 F.3d at 1212–13 (emphasis in

18 original). Unlike *Volt*, the Ninth Circuit in *Wolsey* interpreted the contract *de novo*, and held that

19 "[b]ecause *Mastrobuono* dictates that general choice-of-law clauses do not incorporate state rules

20 that govern the allocation of authority between courts and arbitrators, the district court erred in

21 applying Cal.Civ.Proc.Code Ann. § 1281.2(c) to deny [the defendant's] motion to compel

22 arbitration." *Wolsey*, 144 F.3d at 1213. It would thus be error for this Court to contravene the

23 binding precedent of *Wolsey* and *Mastrobuono*—where the higher courts did reach the

24 incorporation issue—in deciding Deutsch's motion to compel arbitration of Diamond Foods' third

25 party complaint.

26 Faced with the authority discuss above, Diamond Foods cannot explain how the parties

27 could have intended California procedural rules to govern their arbitration when the MSA

28 explicitly incorporates the AAA rules in Section 22 of the MSA. Notwithstanding the choice-of-

12

law provision in Section 30, the MSA does not manifest the parties' intent to incorporate California Code of Civil Procedure Section 1281.2(c) instead of the FAA. Accordingly, Section 1281.2(c) is inapplicable and Diamond Foods cannot invoke that rule to avoid its contractual obligation to arbitrate its claims against Deutsch. *See Wolsey*, 144 F.3d at 1213.

As Diamond Foods provides no other basis for the Court to deny Deutsch's motion to compel arbitration of the third party complaint, the motion is GRANTED. Because the Court grants Deutsch's motion to compel arbitration, it does not reach Deutsch's alternative argument that the third party complaint should be dismissed under Rule 12(b)(6) for failure to state a claim. *See* Mot. at 14-16.

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Deutsch's motion to compel arbitration of Diamond Foods' claims in the third party complaint is GRANTED. Litigation of Diamond Foods' claims against Deutsch *only* shall be STAYED pending the resolution of arbitration. Within seven days of the resolution of the arbitration, Diamond Foods and Deutsch shall file a joint status report advising the Court of the resolution of the matter and any further action required by the Court.

Litigation regarding the claims asserted between Diamond Foods and Hottrix is not stayed and shall proceed in this Court pursuant to the operative Case Schedule.

Dated: June 15, 2018

BETH LABSON FREEMAN
United States District Judge

13